## STATE v. BYLES.
### (No. 742.)

INTERSTATE COMMERCE—ITINERANT VENDOR'S ACT—CONSTITUTIONALITY.

1. Where a citizen and resident of another state conducts a business in this state involving sales by residents of another state to residents of this state of vehicles manufactured in the other state, and the delivery thereof by shipment and transportation from such other state to this state, upon orders solicited for future delivery, he is engaged in interstate commerce.

2. The statute known as the "Itinerant Vendor's Act" (Comp. Stat. 1910, §§ 2844-2850) defining the term "itinerant vendor" for the purposes of the act as including any person, either principal or agent, who engages in an itinerant or transient business in this state, either in one locality or in traveling about the state from place to place selling manufactured goods, wares, or merchandise, and providing that it shall not apply to commercial agents or travelers selling to merchants in the usual course of business, or to persons selling books, papers or school supplies, or to the selling of produce, vegetables, dressed meats or farm products, when sold by the grower or producer, and declaring it unlawful for any person to be engaged in the business of itinerant vendor as defined by the statute unless duly licensed as such in accordance with the provisions of the act, is unconstitutional, because in violation of the provision of Section 8 of Article I of the Constitution of the United States vesting in Congress the power to regulate commerce among the several states.

3. The said "Itinerant Vendor's Act" is also within the inhibition of Section 10 of Article I of the Constitution of the United States providing that no state shall, without the consent of Congress, lay any imposts or duties upon imports or exports except what may be absolutely necessary for executing its inspection laws, in so far as the said act applies to sales by agents in this state of goods manufactured in a foreign state; there being no provision in the act for inspection, and the sole and only effect of the law being to lay a burden or duty upon goods manufactured in and imported from a sister state into this state.

[Decided November 10, 1913.]                    (136 Pac. 114.)

Reserved Questions from the District Court, Sheridan County; Hon. Carroll H. Parmelee, Judge.

The case having been submitted to the District Court upon an agreed statement of facts, and a motion by the defendant for judgment and dismissal, upon the ground of the alleged unconstitutionality of the statute under which the case was brought and prosecuted, the constitutional questions thus raised were reserved for the decision of the Supreme Court. The material facts are stated in the opinion.

*A. C. Lyon* and *H. W. Nichols,* for the defendant.

The earlier statute of 1907 contained a clause specifically declaring that the act shuold not apply to sales of goods in original packages as permitted by the laws of the United States applicable to interstate commerce. When the present law was enacted in 1909, the clause relating to the exemption of interstate commerce transactions of this character was omitted. The Legislature may have thereby intended that such transactions should thereafter be covered by the statute, or the beneficiaries of the statute may have found that many of their own sources of supply were being interfered with, because agents selling to them did not always, or often, deal in original packages. At all events, the present statute discloses no intention to limit its application to intrastate transactions, and hence if the language of the statute is broad enough to cover strictly interstate commerce transactions the Legislative intent is apparent that the statute should extend to them. Whether the statute does, in effect, interfere with, or place a burden upon interstate commerce depends upon its effect and operation as applied to the present case. Upon the facts agreed to it is clear that the defendant was engaged in interstate commerce. A large part of his transactions constituted interstate commerce in its most strict sense. That the statute interferes with and lays a burden upon such business is also clear. (Robbins v. Taxing Dist., 120 U. S. 489; Asher v. Texas, 128 U. S. 129; Leisy v. Hardin, 135 U. S. 100; Brennan v. Titusville, 153 U. S. 287; Stockard v. Morgan, 185 U. S. 27; Caldwell v. North Carolina, 187 U. S. 622; Rearick v. Pennsylvania, 203 U. S. 507; Dozier v. Alabama, 218 U. S. 124; *Ex parte* Stodard, (Nev.) 131 Pac. 133; State v. Willingham, 9 Wyo. 290, 62 Pac. 797). A transaction involving a sale to an individual consumer is as much interstate commerce as a similar sale to a dealer or storekeeper. It is immaterial whether the purchaser desires and expects to use and consume the article himself, or whether he hopes and expects to sell the article to someone else, who, in turn, becomes the

user or consumer. The use to which the article is to be put by the purchaser has no bearing whatever upon the question whether the transaction is or is not interstate commerce. (Cases *supra*).

Does the statute lay an impost or duty upon imports into the State other than required by inspection laws? The act applies only by its terms to those who engage in a temporary or transient business in Wyoming. Those who have stores or fixed places of business in the State may send in their goods freely and sell them. Manufacturers, however, in other States who have no permanent place of business in this State cannot do so. Their goods are met at the border of the State, and their entrance or importation into the State is interfered with or entirely prevented except upon a condition which this State has no power to impose. There is no pretense that the act is an inspection law. In its effect and operation, therefore, it is virtually the laying of a duty or burden upon goods imported into the State from a sister State, and is levied because of the fact merely that the importer does not happen to have a permanent place of business in Wyoming.

Does the statute deny to non-residents the privileges and immunities which the residents and citizens of Wyoming enjoy, and is it, therefore, in violation of the Privileges and Immunities Clause of the Federal Constitution? It is obvious that the statute applies only to those who do not have fixed or permanent places of business within the State of Wyoming. That is the fundamental idea underlying the statute. All its terms carry out that purpose. The result is that one who has a fixed or permanent place of business in the State may himself go from place to place within the State or employ agents for that purpose, exactly as the defendant did, without incurring any of the penalties of the statute. The resident of the State, therefore, who has a store or fixed place of business, is permitted, without license and without annoyance to carry on precisely the same kind of business and in the same way for which a non-resident

can be arrested and fined and imprisoned, for the sole reason that he has no store or fixed place of business within the State of Wyoming. That this effect of the statute renders it unconstitutional and void cannot admit of the slightest question. That it denies to non-residents the privileges and immunities which citizens and residents of Wyoming enjoy is too plain for argument.

The present statute was copied bodily from the Colorado law which was passed in 1905. That law was held in Colorado to be unconstitutional and void. (Smith v. Farr, 46 Colo. 364, 104 Pac. 401). That case was decided October 4, 1909, and subsequent to the enactment of the law in Wyoming. While the decision is not binding on this court, it is certainly entitled to great weight, for the case was given the most careful consideration, and was twice argued orally. Any statute, which by its express language or its necessary effect and operation, discriminates against non-residents or against goods raised or produced outside the State, or which discriminates in favor of residents or in favor of goods grown or produced within the State, or which makes it easy for residents of the State to comply with the law and makes it difficult, if not impossible, for non-residents to comply with the law, is plainly unconstitutional and invalid. Statutes of this sort have been common for more than a hundred years. The Colonies, before we had a government, frequently attempted to protect their own citizens and to burden the residents of other Colonies or the business of non-residents, and this fact was one of the controlling causes leading to the formation of the present government, and is the reason for the constituttional provisions prohibiting any such discrimination. Without attempting to cite all of the cases in which statutes of this kind have been held void, a few will be cited, involving statutes of the same general sort as the one now before the court, which have been declared unconstitutional on this ground of discrimination. (Bacon v. Locke, 42 Wash. 215, 83 Pac. 721; *Ex parte* Deeds, 75 Ark. 542, 87 S. W. 1030; In Re Jarvis, (Kans.) 71 Pac.

576; State v. Bornstein, (Me.) 78 Atl. 281; State v. Williams, (N. C.) 73 S. E. 1000; Rogers v. McCoy, 6 Dak. 238, 44 N. W. 990; Comm. v. Caldwell, 190 Mass. 355, 76 N. E. 955; Sayre v. Phillips, 148 Pa. St. 482, 24 Atl. 76; *Ex parte* Thomas, 71 Cal. 204, 12 Pac. 53; Marshalltown v. Blum, 58 Ia. 184, 12 N. W. 266; Ames v. People, 25 Colo. 508, 55 Pac. 725; State v. Bayer, 34 Utah 257, 97 Pac. 129. See also Clements v. Casper, 4 Wyo. 494, 35 Pac. 472). The decisions of the Supreme Court of the United States on statutes of this kind are binding upon this court. These decisions have been numerous and consistent in holding that such statutes are invalid. (Ward v. Maryland, 97 U. S. (12 Wall.) 418; Welton v. Missouri, 91 U. S. 275; Guy v. Baltimore, 100 U. S. 434; Webber v. Virginia, 103 U. S. 344). Although such statutes do not, in express terms, discriminate against non-residents or against products raised or produced in other states, they are held to be unconstitutional if they have such effect and operation. (Minn. v. Barber, 136 U. S. 313; Brimmer v. Rebman, 138 U. S. 78).

Does the statute deny to the defendant the equal protection of the laws within the prohibition of the Fourteenth Amendment to the U. S. Constitution? Upon this question the whole matter of classification must be considered. The mere fact that the Legislature makes a classification by the statute is not sufficient to relieve it from the application of the Equality Clause of said Amendment, but to take the statute out of the prohibitory clause it must appear that the classification is based upon some reasonable ground, and not a mere arbitrary selection. (Ry. Co. v. Ellis, 165 U. S. 150; Cotting v. K. C. Stock Yards Co., 183 U. S. 79; Connolly v. Union Sewer Pipe Co., 184 U. S. 540). The statute contains a number of classifications having the effect of permitting one person or class of persons to perform acts without punishment for which another person or class of persons may be punished or imprisoned. 1. The statute is made not to apply to commercial agents or travelers selling to merchants in the usual course of business. The classification is

not of itinerant vendors on the one hand and fixed merchants on the other, but it is a classification of itinerant vendors, some of them being subject to the law and others exempt. (Smith v. Farr, *supra*). 2. The statute applies only to manufactured goods. There seems to be no good reason for punishing itinerant vendors who sell manufactured goods and at the same time exempting those who sell goods not manufactured. 3. Persons selling books, papers, or school supplies are exempt from the operation of the statute. Hence the statute does not even apply to all who sell manufactured products.

Does the statute deprive defendant of his liberty or property without due process of law, in violation of said Fourteenth Amendment to the U. S. Constitution, and of the same provision in the Constitution of Wyoming? It is clear that the statute has that effect, for it deprives defendant of his lawful business of selling vehicles, and prevents him from further engaging in the conduct of that business, and deprives him of the right of selling articles which are not injurious or harmful to the public in their use or enjoyment. (*Ex parte* Hull, 153 Fed. 459; State v. Conlon, (Conn.) 33 Atl. 519; Monroe v. Endelman, (Wis.) 138 N. W. 70; Carrollton v. Bazette, 159 Ill. 284, 42 N. E. 847; Iowa City v. Glassman, (Ia.) 136 N. W. 899).

Does the statute violate the provision of the State Constitution requiring all laws of a general nature to have a uniform operation, and the other provision that the Legislature shall not pass any special laws granting to any individual any special or exclusive privileges whatever, .and that no special law shall be passed where a general law can be made applicable? The statute selects various classes or kinds of itinerant vendors and exempts them from the operation of the statute, without any reason therefor that would not require the statute to be extended to them in the same way as to those against whom the statute applies. Does the statute violate the provisions of the State Constitution requiring all taxation to be equal and uniform, and that all bills for rais-

ing revenue shall originate in the House of Representatives? These two questions are presented upon the assumption that it may be urged that the statute is an exercise of the taxing power of the State and was passed as a revenue measure. We do not believe that the statute fairly discloses any such purpose. It is not in form a revenue measure. It places the license fees at a figure which no one could pay and continue in business. It was passed for the purpose of preventing anyone from engaging in the business rather than the purpose of inducing many to engage in such business in order to collect a revenue therefrom. The theory of the statute is that an itinerant vendor cannot lawfully engage in the business without a license and the payment of the prescribed fee. Such provisions indicate that the statute was not intended as a revenue measure. If it was so intended then it seems clear that its burdens are so unequal and lacking in uniformity that it could not be sustained, and if a revenue measure it violated the provision of the Constitution requiring bills for raising revenue to originate in the House of Representatives.

Is the statute void as being unreasonable, discriminatory and prohibitive in that it provides unreasonable, unjust, unequal, and excessive burdens upon the conduct of a lawful business? The statute is nothing more than a trade measure, for the sole and only purpose of preventing non-resident persons or concerns from carrying on their business in such a way as to compete with local merchants or storekeepers. It is of the same type as many statutes passed for that purpose which have been declared to be oppressive and unreasonable. (Denver Jobbers Ass'n. v. People, (Colo.) 122 Pac. 404; Mugler v. Kansas, 123 U. S. 623; Holden v. Hardy, 169 U. S. 366; Postal Tel. C. Co. v. Taylor, 192 U. S. 64; Ry. Co. v. Commissioners, 200 U. S. 561; State v. Rice, (Md.) 80 Atl. 1026; Wyeth v. Cambridge, 200 Mass. 474, 86 N. E. 925; State v. Smith, (Wash.) 84 Pac. 851; State v. Ashbrook, (Mo.) 55 S. W. 627; People v. Marx, (N. Y.) 2 N. E. 29; People v. Gilson, (N. Y.) 17 N. E. 343;

Hauser v. Ins. Co., (N. Y.) 100 N. E. 52; Spaulding v. Evenson, 144 Fed. 913; Utah v. Bayer, 97 Pac. 129; State v. Wright (Ore.) 100 Pac. 296: Tea Co. v. Tippecanoe, (Ohio) 96 N. E. 1092; People v. Jenkins, (N. Y.) 94 N. E. 1065; Tea Co. v. Summit, 189 Fed. 280; Smith v. Farr, *supra;* Eaton v. People, (Colo.) 104 Pac. 407; Clements v. Casper, *supra*). The validity of such a law must depend upon whether its design is to accomplish a legitimate public purpose. If not, while under the pretense of exercising the police power, it is passed as a trade measure for the benefit of a certain kind or class of dealers to protect them from the competition of another kind or class of dealers, both of whom are engaged in selling harmless and legitimate articles, it is such a perversion of the power of the State as to render the statute unconstitutional and void. The mere statement of its real purpose is sufficient to condemn it as an improper measure for the public welfare.

*D. A. Preston,* Attorney General, for the State.

The statute complained of does not attempt to regulate interstate commerce. On the contrary, Section 2 of the Act seems to exempt from the provisions of the act those who are engaged in taking orders and shipping goods to fulfill such orders. The act applies only to those who carry on a transient business in the State. A merchant or dealer who stays in one locality until taxes are due therein and then moves to another locality, staying there until taxes are due, and moves again and continues this conduct, is an itinerant vendor, and competes with permanently located merchants without paying taxes. The State has a right to license such a business as a tax. The defendant was engaged in intrastate commerce in so far as selling the goods already in the State is concerned, and he was subject to the license imposed; and this liability was not avoided by the fact that he did, at times, engage in interstate commerce. He was not arrested for refusing to take out a license for the interstate commerce in which he might be engaged, but for his domestic dealings. The statute allows him the privilege of taking

orders for goods to be later shipped into the State, but requires a license from him for engaging in the business of an "itinerant vendor." (Cleveland, &c., R. Co. v. Bakus, (U. S.) 38 L. Ed. 1041; Postal Tel. C. Co. v. Adams, (U. S.) 39 L. Ed. 311; Am. Steel Iron Co. v. Speed, 192 U. S. 500; Gen'l. Oil Co. v. Crain, 209 U. S. 231; Chrystal v. Mayor, &c., 108 Ga. 27; Racine Iron Co. v. McCommins, 51 L. R. A. 134). The contention that goods brought into the State and held here for sale are exempt from taxation cannot be seriously urged.

The statute makes no distinction between residents and non-residents. One may be a non-resident of the State and still have a fixed and permanent place of business within it, or have no fixed business in the State, and not be subject to the license, so, a resident of the State, without having a fixed and permanent place of business within it will be subject to the statute if he carries on a transient business. In this respect no distinction is made, but the statute applies alike to all persons under the same circumstances. If a permanent business house establishes transient business places in different parts of the State, where are the goods to be taxed? They have the benefit of protection in the locality in which they are located, but when the time for assessment comes they have moved to a new locality. One carrying on a permanent place of business for the sale of jewelry in Cheyenne may see fit to establish temporary stores in different cities in the State during the Christmas buying season; these stores will enjoy all the public protection of the city and county in which they are located and will compete with the local permanent merchants who have or will be taxed on their stock of goods. When the Christmas holiday trade is over these temporary stores are discontinued. This presents the situation of a business upon which the State will have collected no tax. Whether the person engaging in such a transient business has a permanent business in Cheyenne or in another state makes no difference, but the statute covers every such case. (State v. Foster, 22 R. I. 163; Snyder

v. Closson, 84 Ia. 184; *Ex parte* Master, 8 O. C. C. 324).
We submit that there is no actual or attempted discrimina-
tion in this statute. The exemption of commercial travelers
selling to merchants was no doubt put in out of abundant
caution, but as they are not included in the prohibition of
the statute the provision exempting them is mere surplus-
age. ' The act applies to itinerant vendors only; but it ap-
plies to all itinerant vendors, and therefore it is free from
discrimination. (State v. Montgomery, 92 Me. 433;
Machine v. Gage, 100 U. S. 676; Sydow v. Terr., 36 Pac.
214).

SCOTT, CHIEF JUSTICE.

On October 12, 1912, an information was filed in the
District Court of Sheridan county, which, omitting the
caption, signature and verification, is as follows:

"Comes now D. L. Gogerty, county and prosecuting at-
torney of the County of Sheridan and State of Wyoming,
and in the name and by the authority of the State of Wyo-
ming, informs the Court and gives the Court to under-
stand that C. A. Byles, late of the county aforesaid, on or
about the 5th day of October, A. D. 1912, at the County of
Sheridan in the State of Wyoming, did expose and offer
for sale unlawfully manufactured goods, to-wit: buggies
and vehicles as an itinerant vendor without having first pro-
cured a license from Sheridan county, Wyoming, where
said goods were exposed and offered for sale, contrary to
the form of the satute in such case made and provided, and
against the peace and dignity of the State of Wyoming."

The case was submitted to the trial court upon an agreed
statement of facts and motion by the defendant for judg-
ment and dismissal of the case upon such agreed statement
upon the ground of the alleged unconstitutionality of the
statute under which the prosecution was instituted, and
the trial court finding that important and difficult constitu-
tional questions were involved, reserved those questions to
this Court. The agreed statement of facts is as follows, viz:

"It is hereby mutually stipulated and agreed that the following is and may be considered by the Court as the facts in this case, which facts may be taken to have been proven by competent evidence.

The defendant, C. A. Byles, is a citizen and resident of the State of Texas and is employed on a salary and not on commission, by the Spaulding Manufacturing Company, whose factory and principal place of business is situated at Grinnell, Poweshiek county, Iowa, where they are engaged in the manufacture and sale of buggies, carriages and automobiles, the said Spaulding Manufacturing Company being a co-partnership, all the members of which are citizens and residents of the State of Iowa.

The defendant, Byles, was, at the time of his arrest, employed as a foreman or superintendent of a force consisting of four salesmen or canvassers employed by said Spaulding Manufacturing Company, said salesmen or canvassers being engaged in traveling about throughout Sheridan county, Wyoming, and adjoining counties, canvassing and taking orders for the future delivery of vehicles. Each salesman or canvasser carried with him one or more sample vehicles, as well as a catalogue, illustrating many other styles, which samples and catalogues were exhibited to prospective customers. Upon finding a purchaser, the salesman or canvasser took the written order of the customer for a vehicle like the sample exhibited, or the style shown in the catalogue; said order providing that the vehicle purchased would be delivered at the residence of the purchaser within thirty days or as soon as transportation would permit, the salesman at the same time taking either money or notes in payment of the purchase price.

No vehicle was delivered by any salesman or canvasser at the time that the order was taken therefor. The orders thus taken by the various salesmen or canvassers were turned over to their superintendent or foreman, C. A. Byles, the defendant in this case, who looked up the reputation and financial responsibility of the purchaser, and

if found to be satisfactory, directed that the order be filled and the vehicle delivered in pursuance thereof.

The Spaulding Manufacturing Company had a few vehicles manufactured by them in Grinnell, Iowa, which were under the charge of the defendant, Byles, in a storage warehouse in Sheridan, Wyoming, temporarily occupied for that purpose, the number of said vehicles so stored being not to exceed fifteen or twenty, outside of those used exclusively as samples. If the defendant Byles had no vehicle on hand in staid storage warehouse, corresponding to the styles named in said orders, as was frequently the case, the order was sent directly to the factory of the Spaulding Manufacturing Company at Grinnell, Iowa, and the order was filled by sending a vehicle from said factory in Grinnell, Iowa, consigned to themselves, at Sheridan, Wyoming, to be delivered by the defendant, Byles, or under his direction to the respective purchasers, in pursuance of such orders. If the defendant Byles had on hand in the storage warehouse in Sheridan, Wyoming, a vehicle corresponding to the one ordered, he directed that the order be filled and the vehicle be subsequently delivered to the purchaser from the said storage warehouse. All sales were made subject to the approval of the Spaulding Manufacturing Company at Grinnell, Iowa, and, even after delivery, if disapproved by them, the vehicle was 'pulled' or taken back and the order and notes or cash were returned to the customer. No orders were taken or sales made by any of the salesmen or canvassers, under defendant Byles' supervision, to merchants or dealers in vehicles, but all sales were made to individual users or consumers. The defendant, Byles, personally did not sell or offer to sell any vehicles, but merely had charge of the force of salesmen or canvassers, as above described. Neither the Spaulding Manufacturing Company nor the defendant, C. A. Byles, had a store or permanent place of business in Sheridan county, Wyoming, or at any other place within the State of Wyoming. The defendant, C. A. Byles, was arrested, charged with a violation of the law of Wyoming known as the Itinerant Vendor Act, being sections

2844 to 2850, inclusive, of the Compiled Statutes of Wyoming of 1910, being Chapter 158 of the Session Laws of Wyoming of 1909.

Said statute was Senate Bill No. 76 of the Laws of 1909 and was introduced and originated in the Senate and not in the House of Representatives. If the defendant, Byles, or his employers, the Spaulding Manufacturing Company, of Grinnell, Iowa, be required to pay an annual license for transacting the above described business within the State of Wyoming, as provided for in said statute, the payment of such license fees would render their business unprofitable and entirely prevent them from engaging in it in this state.

Neither the defendant, C. A. Byles, nor any of the salesmen or canvassers under his direction nor his employers, the said Spaulding Mfg. Co., had a license to transact the above described business in Sheridan county, Wyoming, as required by said Itinerant Vendor Statute.

We hereby agree that the above and foregoing is a correct statement of the facts in the above entitled cause.

(Signed)  A. C. LYON,
H. W. NICHOLS,
Attorneys for Defendant.
D. L. GOGERTY,
Prosecuting Attorney of Sheridan County."

The first two reserved questions are as follows:

### I.

· "Upon the agreed statement of facts filed herein, is the statute known as the Itinerant Vendor's Law, as found in Sections 2844 to 2850, inclusive, of the Compiled Statutes of 1910, unconstitutional and void as an interference with and an attempt to regulate commerce between the State of Wyoming and the several other states in violation and contravention of the provisions of Section 8 of Article I. of the Constitution of the United States, wherein it is provided that 'The Congress shall have power * * * * * to regulate commerce with foreign nations and among the several states and with the Indian tribes'?"

## II.

"Upon said agreed statement of facts, is said statute unconstitutional and void as in violation and contravention of the provisions of Section 10, Article I. of the Constitution of the United States, wherein it is provided that: 'No state shall, without the consent of Congress, lay any imposts or duties upon imports or exports, excepting what may be absolutely necessary for executing its inspection laws'?"

The law, the constitutionality of which is assailed, is known and commonly called the "Itinerant Vendor's Act" and was enacted as Chapter 158, S. L. 1909, at page 219, and incorporated in the Compiled Statutes of 1910, Sections 2844 to 2850, inclusive. Section 2844 defines the term "itinerant vendor" for the purposes of the act in the following language, viz: "The term, 'itinerant vendor' for the purpose of this act shall mean and include any person, either principal or agent, who engages in either an itinerant or transient business in this state, either in one locality or in traveling about the state from place to place selling manufactured goods, wares or merchandise, and it shall include peddlers and hawkers, and also those who for the purpose of carrying on their temporary or transient business, hire, lease or occupy a building, structure, tent, car, boat, vehicle of any kind for the exhibition or sale of any manufactured goods, wares, or merchandise." Section 2845 is as follows: "The provisions of this act shall not apply to commercial agents or travelers selling to merchants in this state in the usual course of business or to persons selling books, papers and school supplies; Provided, This act shall not apply to the selling of fruits, vegetables, dressed meats or farm products when sold by the grower or producer. Except that as in this section permitted, it shall not be lawful for any persons to be engaged in the business of itinerant vendor as defined by §2844, unless such person shall be duly licensed so to do in accordance with the provisions of this act."

Section 2846 provides that every itinerant vendor before making sale of manufactured goods, wares or merchandise

shall first pay for and obtain a license from the county clerk of the county wherein he proposes to sell such manufactured goods, wares or mechandise.

Section 2847 is as follows: "Every person licensed as aforesaid as an 'itinerant vendor' shall post his name, residence and the number of his license in a conspicuous manner upon his pack, parcel, or vehicle, or in a prominent place in his place of business, and when his license is demanded of him by any county officer, magistrate, sheriff, deputy sheriff, constable or police officer, he shall forthwith exhibit it, and if he neglects or refuses to do so, he shall be subject to the same penalties as if he had no license."

Section 2848 provides a penalty for every "itinerant vendor" who violates the foregoing sections and is as follows: "Every 'itinerant vendor' who sells or exposes for sale either at public or private sale, in any county in this state, any manufactured goods, merchandise, fruits, vegetables, dressed meats or farm products without having first procured a license from the county in which he sells or exposes for sale, such manufactured goods, wares or merchandise, fruits, vegetables, dressed meats or farm products, as provided for in this act, shall be punished by a fine of not less than fifty dollars, and not more than one hundred and fifty dollars, or by imprisonment in the county jail for a period of not less than ten, nor more than ninety days, or by both such fine and imprisonment."

It is contended that the act is in violation of the interstate commerce clause of the Constitution of the United States. The agreed statement of facts shows that the defendant was in fact engaged in interstate commerce. He was a resident and citizen of the State of Texas and all of his business involved the sale by residents of other states to citizens of this state of goods manufactured in other states the delivery of which required the shipment and transportation of vehicles from the State of Iowa to this state in pursuance of the conduct of such business. The defendant and canvassers under his direction solicited orders for future delivery of vehicles like the sample exhibited and which

orders were filled in most instances by shipment direct from the factory in Grinnell, Iowa, to be delivered to and at the home of the purchaser in this state. The statute has to do with interstate commerce business and in requiring a license to be paid not for purposes of inspection which would be in the nature of a police regulation, lays a burden upon such business. It was so held in principle by this court in State v. Willingham, 9 Wyo. 290, 62 Pac. 797, (52 L. R. A. 198, 87 Am. St. Rep. 948), in which Willingham, the defendant, was prosecuted, convicted and fined within the provisions and for the violation of an ordinance of the City of Cheyenne which made it unlawful for any person to keep a store or sell, vend or retail any goods, wares or merchandise without being first duly authorized by a license as provided in the ordinance and excepting from the requirements of the ordinance all persons engaged in the sale of goods, wares and merchandise who pay an annual tax upon such goods, wares, or merchandise, assessed according to the revenue laws of the city and also excepting from such ordinance all traveling agents who sell exclusively by sample or otherwise to regular merchants doing business in that city. The ordinance was held void because in violation of the interstate commerce clause of the Constitution of the United States, following Clements v. The Town of Casper, an earlier decision of this court reported in 4 Wyo. 495, 35 Pac. 472. These cases establish the rule of decision in this court that a municipal ordinance which lays a burden upon interstate commerce must be held unconstitutional and void and it follows that a statute which does the same thing must likewise be held unconstitutional. Upon the agreed statement of facts we are of the opinion that the first interrogatory as to whether the statute under which the prosecution is sought to be maintained is unconstitutional and void and must be answered in the affirmative. We, therefore, answer said first question, "Yes."

Is the statute under consideration within the inhibition of Section 10 of Art. I of the Constitution of the United States, wherein it is provided that: "No state shall, without the

consent of Congress, lay any imposts or duties upon imports or exports, excepting what may be absolutely necessary for executing its inspection laws"? There is no provision in the law for inspection. There is no pretense that the manufactured goods here shipped into the state should be inspected. They do not fall within the class covered by any statute or police or health regulation of the state. The right to levy tax to enforce inspection laws is expressly excepted from the inhibition of the Constitution, but the act does not measure up to the requirement of that provision. The sole and only effect and operation of the law is to lay a burden or duty upon goods manufactured in and imported from a sister state into this state and for that reason we are of the opinion that the law is also unconstitutional under Section 10, Art. I of the Constitution of the United States. We, therefore, answer the second question, "Yes."

Having upon the grounds and for the reasons stated found the statute unconstitutional, it would make no difference in so far as this attempted prosecution is concerned, whether the statute is violative of other Constitutional provisions or not and for that reason we deem it unnecessary to set out and discuss or answer any or either of the other reserved questions, and we, therefore, return them unanswered to the District Court of Sheridan county.

BEARD, J., concurs.

POTTER, J., being ill, did not participate in this opinion.