# TOWN OF GREEN RIVER v. BUNGER

(No. 1922; June 9, 1936; 58 Pac. (2d) 456)

(Rehearing denied October 20, 1936)

For the defendant and appellant there was a brief by *Ellery, Hunter & Ferrall* of Cheyenne, and *Lewis H. Brown* of Rock Springs, and oral argument by *C. R. Ellery* and *Bard Ferrall.*

For the respondent there was a brief and the cause was argued orally by *T. S. Taliaferro, Jr.,* and *A. L. Taliaferro,* both of Rock Springs.

KIMBALL, Chief Justice.

The defendant appeals from a judgment finding him guilty of violating an ordinance of the Town of Green River. The material parts of the ordinance are copied below:

Section 1. "The practice of going in and upon private residences, in the Town of Green River, Wyoming, by solicitors, peddlers, hawkers, itinerant merchants, and transient vendors of merchandise, not having been requested or invited so to do by the owner or owners, occupant or occupants of said private residences, for the purpose of soliciting orders for the sale of goods, wares, and merchandise, and/or for the purpose of disposing of and/or peddling or hawking the same, is hereby declared to be a nuisance, and punishable as such as a misdemeanor.

\*    \*    \*    \*    \*    \*    \*    \*

Section 3. "Any person convicted of perpetrating a nuisance, as described and prohibited in the first section of this ordinance, upon conviction thereof shall be fined in a sum not less than Twenty-five ($25.00) Dollars or more than One Hundred ($100.00) Dollars together with costs of proceedings, which said fine may be satisfied if not paid in case by execution against the person of anyone convicted of committing the misdemeanor as herein prohibited."

Defendant is an employee of the Fuller Brush Company, engaged in the manufacture and sale of brushes. The brushes are manufactured in Connecticut and sold directly to consumers throughout the United States.

Sales are made on orders obtained by house to house solicitation by employees, including defendant, who send the orders to a distributing station from which the goods are shipped for delivery to the purchaser. Shipments to fill orders obtained in Wyoming are interstate.

Soon after the ordinance was passed, it was attacked in the Federal courts in an action brought by the Fuller Brush Company who contended that the ordinance was an arbitrary and unreasonable regulation of a lawful business, and invalid as opposed to the due process, equal protection and commerce clauses of the Federal constitution. In the Federal District Court (Fuller Brush Co. v. Town of Green River, 60 F. (2d) 613), the ordinance was declared invalid, and its enforcement enjoined. On appeal to the Circuit Court of Appeals (Town of Green River v. Fuller Brush Co., 65 F. (2d) 112; 88 A. L. R. 177), the ordinance was upheld as a valid regulation under the police power and as not offensive to any of the invoked provisions of the Federal Constitution. These cases attracted much comment. See 6 Rocky Mountain L. R. 85; 31 Mich. L. R. 539; 19 Iowa L. J. 375; 18 Minn. L. R. 475; 12 Ore. L. R. 155; 13 Boston U. L. R. 98; 46 Harvard L. R. 154; 81 U. of Pa. L. R. 331.

In the fall of 1933, after the decision by Circuit Court of Appeals, the Fuller Brush Company instructed defendant to continue to make house to house calls in Green River, in the interests of the company, but the manner of approach, as described in the Federal case, was changed for the evident purpose of evading the ordinance. When in response to the ring or knock of the defendant some one appeared at the door, defendant would say that he was the authorized representative of the Fuller Brush Company and was in town calling on customers of the company; that be-

cause of an ordinance of the town he was not permitted to call with his brushes to demonstrate unless requested or invited to do so; that he would call later for that purpose, if given an invitation. He would then ask for an invitation, and exhibit a card to be signed. The card, above the place for signature, recites: "To the Fuller Brush Company: I hereby request your representative to call and demonstrate your brushes from time to time when he is in town. I am under no obligation to buy." Some time during the conversation the defendant would say that the signing of the card would entitle the signer to a brush as a gift when the defendant returned to show and demonstrate his goods. There was evidence that the defendant called at private residences in Green River, not having been requested or invited so to do by the owners or occupants, and in the manner above outlined solicited invitations to call later to solicit orders for goods. The evidence was sufficient to show that some of the persons thus solicited were disturbed or annoyed. Others were willing to be solicited, and signed the card.

It is contended that defendant did not violate the ordinance by soliciting in this manner. The operative words of the ordinance, as applied to this case, forbid the "going in and upon private residences, in the Town of Green River, Wyoming, by solicitors * * *, not having been requested or invited so to do by the owner or owners, occupant or occupants of said private residences, for the purpose of soliciting orders for the sale of goods * * *." The question raised is whether the evidence is sufficient to warrant a finding that defendant's entries on private residences were "for the purpose of soliciting orders for the sale of goods" within the terms of the ordinance. Defendant invokes the familiar rule that penal statutes, as said in State v. A. H. Read Co., 33 Wyo. 387, 402-403, 240 Pac. 208, 213, "are to be strictly construed, which means that

they are not to be enlarged by implication or extended by inference or construction." And see People ex rel. v. Dolan, 5 Wyo. 245, 252, 39 Pac. 752. The rule is not violated by allowing the language of a penal statute to have its full meaning where that construction is in harmony with the context and supports the policy and purposes of the enactment. United States v. Koenig Coal Co., 270 U. S. 512, 520; Donnelley v. United States, 276 U. S. 505, 512. A construction that will sanction an evasion of the policy of the law ought in no case to be adopted unless the natural meaning of the words requires it. American Fur Co. v. United States, 2 Peters 358, 367; The Emily and The Caroline, 9 Wheat. 381, 389; State v. Hand, 71 N. J. Law, 137, 58 Atl. 641; Attorney General v. Tongue, 12 Price 51, 63; Heydon's Case, 3 Co. Rep. 7a. In United States v. Morris, 14 Peters 464, the defendant was prosecuted under a statute forbidding service on board a vessel "employed or made use of in the transportation or carrying of slaves." The vessel on which defendant served was captured on its voyage to Africa. There was evidence sufficient to show that the purpose of the voyage was to obtain a cargo of slaves, but no slaves had been taken aboard. It was held that to constitute the offense under the statute it was not necessary that there should be an actual transportation or carrying of slaves in the vessel.

The ordinance in question is intended to suppress acts having a tendency to annoy, disturb and inconvenience people in their homes. The annoyance to the home-occupant occurs when he is disturbed by the intrusion of the class of persons described. The ordinance does not apply to all uninvited visitors, but only (so far as now material) to those whose purpose is to solicit orders for the sales of goods. To warrant a conviction the evidence must be sufficient to show the entry for the stated purpose, but it need not show an

actual solicitation of orders. We should not give the ordinance a construction that will permit solicitors to create the annoyance by entering homes for the purpose of soliciting orders, and then evade the penalty by showing that all they asked for in the beginning was an invitation to solicit orders. The solicitation of the invitation was not a purpose in itself, but a step in carrying out the purpose to solicit orders. Defendant's conduct falls both within the reasonable meaning of the terms, and within the spirit and scope, of the ordinance. See People ex rel. v. Dolan, supra.

Defendant contends that the ordinance is unauthorized and, if it prohibits solicitation by him in the manner above described, is arbitrary and unreasonable, and contrary to constitutional restraints on legislative power. The invoked constitutional provisions are the commerce clause of section 8 of article 1 and the equal protection and due process clauses of section 1 of the 14th amendment of the Federal constitution, and the following sections of the state constitution: Section 2 of article 1, that "in their inherent right to life, liberty and the pursuit of happiness, all members of the human race are equal"; section 6 of article 1, the due process clause, and section 7 of article 1, that "absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in the republic, not even in the largest majority."

We shall consider, first, the right of the town to enact and enforce the ordinance in the exercise of its delegated police power.

Section 22-1427, R. S. 1931, provides: "The town council * * * shall have the following powers: * * *

6. "To declare what shall constitute a nuisance, and to prevent, abate and remove the same, and to take such measures for the preservation of the public health as they may deem necessary, * * *.

12. "To prevent and restrain * * * noises, disturbances, * * * in any street, house or place in the town; * * *.

29. "To make and establish such by-laws, ordinances, rules and regulations, not repugnant to the laws of the state, as may be necessary to carry into effect the provisions of this article, * * * and to enforce all such by-laws, ordinances, rules and regulations, by inflicting penalties for the violation thereof * * *."

There may be doubt that the practice denounced by the ordinance is a nuisance in a technical sense. There seems to be no definition of nuisance which is broad enough to include all those things that are nuisances, and so limited as to exclude those things to which the law gives another name. A practice which includes the uninvited entry to private homes and the annoyance of the home-occupant, would come within general definitions of nuisance, such as that of Blackstone (Comm. V. 3, p. 216), "any thing that worketh hurt, inconvenience or damage," and that of Pollock (on Torts (12th ed.) p. 406), "the wrong done to a man by disturbing him in the enjoyment of his property." An entry on lands of another without his license is a trespass, and it has been said that "nothing is rightly classed as a nuisance if it is really a trespass." Salmond on Torts (6th ed.) p. 249. Pollock (supra) says that nuisance "is in some respects analogous to trespass, and the two may coincide, some kinds of nuisance being also continuing trespasses." See 4 Cambridge L. Journal, p. 201. The practice which the ordinance declares to be a nuisance might better be described as a succession of trespasses causing disturbance. The United States Circuit Court of Appeals in Town of Green River v. Fuller Brush Co., supra, may have used the word "nuisance" in a popular sense, as synonomous with

"annoyance" or "disturbance," when it said that the frequent ringing of doorbells at private residences by itinerant vendors and solicitors is in fact a nuisance to the occupants of homes. That case, as shown below, is not the only authority for applying the epithet "nuisance" or "disturbance" or "annoyance" to the conduct of house to house canvassers.

To sustain the ordinance, we think it unnecessary to decide that the practice which it denounces is a nuisance. The declaration to that effect shows, however, that the purpose of the ordinance is to prevent disturbance and annoyance, the important elements of nuisance. And if the ordinance is a legitimate exercise of the power of the town to prevent disturbances, under sub-section 12 of section 22-1427, supra, it ought not to be held invalid because it erroneously applied the term "nuisance" to the forbidden conduct. See Freund on Police Power, § 146; Goodrich v. Busse, 247 Ill. 366, 93 N. E. 292, 139 Am. St. Rep. 335, 20 Ann. Cas. 589; State v. Harlowe, 174 Wash. 227, 24 P. (2d) 601; State v. Helton, 255 Mo. 170, 164 S. W. 457; Singleton v. Commonwealth, 164 Ky. 243, 175 S. W. 372.

We therefore inquire whether the ordinance is a reasonable exercise of the power to prevent disturbances. The ordinance affects only the practice of entering homes for certain purposes without invitation. The home is a favorite of the law. It is there that the citizen can claim the right of privacy, the right to be let alone, on clear grounds. For the protection of this right the ordinary remedies by civil suit are available, but these remedies are hardly adequate when annoyance is caused by frequent entries by different persons who follow each other and act independently. Counsel for defendant admit that the business of house to house selling and soliciting is constantly increasing. The

president of the Fuller Brush Company, in 1927, in an article appearing in Magazine of Business (vol. 52, p. 703), noted in 6 Rocky Mountain Law Rev. 92, refers to the "considerable increase in the number of house to house salesmen," who may arrive at "an extremely inconvenient time." "They tend to hinder one another * * *; after three or four have rung the doorbell, the housewife is far from friendly."

The annoyance incident to house to house solicitation has often been the subject of comment. In Graffty v. City of Rushville, 107 Ind. 502, hawkers, peddlers and solicitors are referred to as a class who go "unbidden from house to house to ply their trade"; who "are liable to invade social order by seeking purchasers of their wares in the homes of citizens," and the court recognized the right of citizens to be protected from the "importunities and presence" of those who make "indiscriminate invasion" of the home. In City of Titusville v. Brennan, 143 Pa. 642, 22 Atl. 893, 14 L. R. A. 100, the court speaks of the "intrusive domiciliary visitation" of the solicitor who "hunts his customers in their own homes." In Philadelphia v. Brabender, 201 Pa. 574, 51 Atl. 374, 58 L. R. A. 220, it was said that the distribution of handbills and circulars into the vestibules of dwellings was an annoyance and what, in common parlance, is a nuisance to the owners of the premises.

An ordinance of Jersey City provided that: "No person shall distribute * * * to the occupants of any house * * * any newspaper, paper, periodical, book, magazine, circular, card or pamphlet, unless the same has been previously ordered by the person in actual occupation of the house * * *." The conviction of one who called at a private residence and delivered an unsolicited advertising circular to the occupant, was upheld in Allen v. McGovern, 12 N. J. Misc. 12, 169

Atl. 345, against the contention that the ordinance was an unreasonable interference with the right to pursue the lawful occupation of advertising merchandise. In Maplewood Township v. Albright, 13 N. J. Misc. 46, 176 Atl. 194, the court, in sustaining a somewhat similar ordinance, said that it seemed "well within the power of the municipality to protect its householders and housewives from unwarranted intrusion on their premises of strangers and persons not calling in the ordinary course of business." See, also, Dziatkiewicz v. Township of Maplewood, 15 N. J. Law 37, 178 Atl. 205.

Professor Freund (Police Power, § 288) says that "in the city the soliciting of custom at private residences may be as much of a nuisance as begging, and may perhaps on that ground be prohibited." The author of an article on the subject of legislation to protect the right of privacy (81 U. of Pa. Law Rev. p. 324) mentions among the activities affecting that right, "the aggression with which supersalesmen invade otherwise secluded surroundings."

Statutes and ordinances to prevent annoyance by solicitation, and like conduct, that did not involve disturbance in the home, have been upheld as reasonable measures under the police power in several cases. An ordinance prohibiting the distribution of handbills, etc. in the public streets was upheld on the ground, among others, that it controlled annoying methods of interfering with persons traveling therein. International Text Book Co. v. City of Auburn, 155 Fed. 986; s. c., 163 Fed. 543. Laws prescribing a punishment for those who engage in the temporary business of vending within a certain distance ($\frac{1}{2}$ mile, 1 mile, 2 miles) of camp meetings or fairs, without consent of those in charge of the meetings or fairs, have been sustained as reasonable police regulations in at least six states,

on the ground that they are intended to prevent disturbances. State v. Reynolds, 77 Conn. 131, 58 Atl. 755; State v. Read, 12 R. I. 137; Meyers v. Baker, 120 Ill. 567, 12 N. E. 79; State v. Cate, 58 N. H. 240; Com. v. Bearse, 132 Mass. 542; State v. Stovall, 103 N. C. 416.

An ordinance making it unlawful to solicit custom or patronage upon any boat, or in any depot, for any hotel or for the transportation of persons or property was upheld in Ex Parte Barmore, 174 Calif. 286, 163 Pac. 50, L. R. A. 1917D, 688, as a police measure promoting the comfort and convenience of travelers and to protect them "from the annoyance of importunate requests for employment." There are many cases sustaining similar ordinances or statutes. The most important (because it was reviewed by the United States Supreme Court) is Williams v. Arkansas, *infra*. A statute of Arkansas, entitled "an act for the protection of passengers, and for the suppression of drumming and soliciting upon railroad trains and upon the premises of common carriers," prohibited the soliciting of business "for any hotel, lodging house, eating house, bath house, physician, masseur, surgeon or other medical practitioner, on any train, cars or depots of any railroad or common carrier." The act was sustained (Williams v. Arkansas, 85 Ark. 470, 108 S. W. 833, 26 L. R. A. (N. S.) 482, 122 Am. St. Rep. 47; and on error, 217 U. S. 79, 18 Ann. Cas. 865) as an exercise of the police power for the convenience and comfort of travelers on railroads by preventing annoyance from importunities of drummers.

The United States District Court in Fuller Brush Company v. Town of Green River, supra, said that "If [the ordinance] is sought to be sustained upon the ground that the disturbance of the occupant of the house is the basis of the relief sought, it is not compre-

hensive, because the occupant might still be subjected to other types of solicitors, including those soliciting alms." We are not sure that the defendant in the present case is contending that the law is void because it does not apply to all classes of solicitors. Section 27 of Art. 3 of the state constitution, which limits the power to enact special laws, is not invoked. We think the equal protection clause of the 14th amendment of the Federal constitution does not prevent legislation that applies to the class mentioned in the ordinance. It has been said that a state "may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuse, and it may do so none the less that the forbidden act does not differ in kind from those that are allowed * * *. If a class is deemed to prevent a conspicuous example of what the legislature seeks to prevent, the 14th amendment allows it to be dealt with although otherwise and merely logically not distinguishable from others not embraced in the law." Central Lumber Company v. South Dakota, 226 U. S. 157, 160. See Bacon v. Walker, 204 U. S. 311, 318. From early times, hawkers, peddlers and petty chapmen, who ply their trade by going from house to house, have been considered as a class for the purpose of legislative control and restriction. Canvassers and solicitors are frequently included in the same class, and no objection to this can be found, where the object of the law is to prevent disturbance or annoyance. See Town of Green River v. Fuller Brush Co. supra. In Williams v. Arkansas, and many other cases cited above, statutes and ordinances have been upheld on the ground that they prevented annoyance by acts of a certain class, though the class did not include all who might cause similar annoyance.

Defendant asserts that he has the right to solicit at homes by virtue of an implied invitation which cannot be recalled except by some act of the occupants. What

is often called an implied invitation to enter on lands, is perhaps more accurately described as a license by consent implied from custom. See Restatement of Torts § 167, Comment d. We have not seen any case expressly deciding that those peddling or soliciting at homes enjoy this license. It may be that heretofore their entries to homes have been trespasses, not consented to, but merely endured because the home occupants (usually housewives) did not think it worthwhile to take the trouble necessary to put a stop to the practice. See Winder v. Blake, 4 Jones L. (N. C.) 332, 334; Cooley on Torts (4th ed.) § 358. Without pursuing this question further, we may concede that in the past, in the absence of objection by the occupants, solicitors have been free to enter homes for their business purposes. See 31 Mich. L. Rev. 539. It does not follow that an act regulating and restricting the practice is invalid. "The power of the legislature to declare that which is perfectly innocent in itself to be unlawful is beyond question, and in such case the legislature may annex to the prohibited act all the incidents of a criminal offense * * *." Lawton v. Steele, 152 U. S. 133, 143. The power is unlimited except in so far as it is restrained by constitutional provisions and guaranties. It is not a good objection to a statute prohibiting a particular act and making its commission a public offense that the prohibited act was before the statute lawful or even innocent, and without any element of moral turpitude. People v. West, 106 N. Y. 293. We are cited to no authority for holding that a privilege under a custom or implied license may not be regulated by law, unless it be Real Silk Hosiery Mills v. City of Richmond, 298 Fed. 126. A custom, recognized by law, that permits cattle to run at large and trespass on unfenced lands may be abolished. Bulpit v. Matthews, 145 Ill. 345, 34 N. E. 525, 22 L. R. A. 55; Marsh v. Koons, 78 Oh. St. 68, 84 N. E. 599, 16 L. R.

A. (N. S.) 647. A statute of Idaho made it unlawful to herd sheep within two miles of the dwelling house of the owner of a possessory claim. The statute was sustained as a legitimate exercise of the state's police power (Bacon v. Walker, 204 U. S. 311) and enforced against a defendant who was herding sheep on lands of the United States within two miles of plaintiff's dwelling house. Defendant's contention that he was engaged in a legitimate and inoffensive business at a place where he had a right to be under an implied license growing out of long established custom to use the public lands of the United States for the grazing of domestic animals, was of no avail. See, also, Omaechevarria v. State, 246 U. S. 343, a criminal prosecution under a state statute prohibiting the grazing of sheep on a range previously occupied by cattle. The law was sustained, though it prevented defendant from grazing his sheep on a part of the public domain under the implied license or tacit consent of the United States.

Though it is conceded that house to house soliciting is disturbing and annoying to some of the occupants of houses, it is asserted that this is a private as distinguished from a public wrong, and that its regulation or restriction should be left to the individuals who object to the continuance of the practice. A writer on criminal law whose opinions are seldom condemned by the courts has said that "whenever the public deems an act of private wrong to be of a nature requiring its intervention for the protection of the individual, it holds the act punishable at its own suit; in other words, makes it a crime." Bishop, Criminal Law (9th ed.) § 234, and see, id. § 252. Criminal laws for protection of the right of privacy have frequently been suggested. See, Warren and Brandies in 4 Harvard L. R., p. 219; P. H. Winfield in 47 Law Q. Rev. 26; 81 U. of Pa. L. Rev. 330-331. Defendant suggests that the ordinance

might be valid if it applied only to solicitation at those houses where the practice is forbidden by a sufficiently definite sign. See Real Silk Hosiery Mills v. City of Richmond, 298 Fed. 126. The purpose of the sign would be to designate the houses of those who do not care to be disturbed by solicitors, in order to permit soliciting at other houses. This purpose can be accomplished under the ordinance by an invitation to solicitors by those who want their visits continued. An invitation can be given by a sign on the house, or by assent expressed in some other way. See Town of Green River v. Fuller Brush Co., supra. We cannot say that the town authorities were not justified in believing that it would be less inconvenient for some citizens to give invitations than for the others to give notices of their desire to be let alone.

The ordinance has a real and substantial relation to the purpose of protecting occupants of homes from disturbance, and we think it is an authorized and reasonable exercise of the police powers of the state delegated to the town council. In so far as it restricts the defendant's activities in going uninvited to private residences for business purposes, it does not deprive him of any right guaranteed to him by either the 14th amendment to the Federal constitution or the invoked provisions of the State constitution.

As we think the ordinance is a valid exercise of the power to prevent disturbances, we need not consider whether it may also have some relation to the public health and safety.

On the question whether the ordinance is repugnant to the interstate commerce clause of the Federal constitution, the applicable principle may be stated in the language of Mr. Chief Justice Hughes in Savage v. Jones, 225 U. S. 501, 524-525. "The State cannot, under cover of exerting its police powers, undertake what

amounts essentially to a regulation of interstate commerce, or impose a direct burden upon that commerce. But when the local police regulation has real relation to the suitable protection of the people of the State, and is reasonable in its requirements, it is not invalid because it may incidentally affect interstate commerce, provided it does not conflict with legislation enacted by Congress pursuant to its constitutional authority."

We are cited to many causes holding that a state tax or license imposed on those who solicit orders for goods to be delivered by interstate shipments is a direct burden on interstate commerce. See, Clements v. Town of Casper, 4 Wyo. 494, 35 Pac. 472; State v. Willingham, 9 Wyo. 290, 62 Pac. 797, 52 L. R. A. 198, 87 A. S. R. 948; State v. Byles, 22 Wyo. 136, 136 Pac. 114; Robbins v. Taxing District of Shelby Co., 120 U. S. 489; Real Silk Hosiery Mills v. Portland, 268 U. S. 325; Myers v. City of Miami, 100 Fla. 1537, 131 So. 375. We have in this case no question of the exaction of a license fee or a tax. The ordinance clearly is a local police regulation. We have decided that it has a real relation to the suitable protection of people in their homes, and is reasonable in its requirements. If we are right in our views as to the purpose and reasonableness of the ordinance, it is valid, under the rule stated in Savage v. Jones, supra, though it may incidentally affect interstate commerce. Both Federal courts that considered the ordinance were of the same opinion on that question. 60 F. (2d) 614; 65 F. (2d) 115. The Circuit Court of Appeals said: "[The ordinance] does not purport to interfere in any respect with [the Fuller Brush Company's] right or privilege of selling and transporting its wares in interstate commerce. It is free to carry on a business of that sort except to solicit orders in the manner specified in the

ordinance, and obviously it could do so in many ways other than imposing itself upon and disturbing the residents of the town as prohibited by the ordinance."

The judgment will be affirmed.

BLUME and RINER, JJ., concur.