## Commonwealth v. Harrar

*John H. Wood, Jr.*, for prosecutor.
*Arthur M. Eastburn, Jr.*, for defendant.

**342**

BIESTER, P. J., June 28, 1957.—In this case defendant was convicted before a justice of the peace for failure to comply with the terms of an ordinance of Bensalem Township, this county, regulating soliciting and peddling within the township and requiring such solicitors and peddlers to obtain a license.

The conviction having been appealed, a hearing de novo was had by this court, at which the following facts were adduced: Defendant is an employe and divisional sales manager of C. W. Stewart and Company, a corporation of the State of New York with its principal office in the City of Newark, N. Y. At the time of his arrest, he, together with two other men, in furtherance of the business of C. W. Stewart and Company, were engaged in visiting various homes in Bensalem Township, attempting to obtain orders for the sale of nursery stock. Such stock was not ready for immediate delivery, the purpose of the sales personnel being to obtain an appointment with a prospective customer, usually in the evening, so that both husband and wife would be available for the purpose of discussing possible purchases.

The language of the ordinance in question distinguishes between the terms "peddling" and "soliciting". As to the former, it is defined as meaning "the selling or offering for sale of any goods, wares or merchandise for immediate delivery, which the person selling or offering for sale carries with him in travelling, or has in his possession or control." From the above recited facts, it appears clear that defendant did not fall within this category.

The word "soliciting" as used in the ordinance is defined as meaning "the seeking or taking of contracts or orders for any goods, wares or merchandise for future delivery."

Without detailing the evidence presented, it appears clear that defendant was in violation of the sections of

the ordinance relating to soliciting and there is no serious contention on his part that his conduct was not violatory of the ordinance, since no license had been procured from the chief of police as required therein. The attack of defendant is not devoted to a factual denial of the violation of the ordinance, but rather an attack upon the ordinance itself. Defendant's first contention is that the ordinance constituted an unreasonable and unconstitutional interference with, and burden upon, interstate commerce in which defendant was admittedly engaged.

Although we must agree that the law on this question was for some time in a state of flux, there appears to now be reasonable certainty, especially since the decision of the District Court of the United States for the District of Wyoming in the case of Town of Green River v. Fuller Brush Co., 65 F. 2d 112 (1933). In that case the ordinance proscribed solicitors, peddlers, itinerant merchants and transient vendors of merchandise from going in and upon private residences in the town of Green River, Wyo., unless requested or invited to do so by the owner or occupant, declared such practice to be a nuisance and provided for a fine of not less than $25 nor more than $100 in case of violation. The court held this ordinance to be an appropriate exercise of police power and was of the opinion that the ordinance and its enforcement did not interfere directly or indirectly with defendant's rights, nor with interstate commerce. It cites with favor the case of Sligh v. Kirkwood, 237 U. S. 52, 35 S. Ct. 501, 503, in which it is said:

"Nor does it make any difference that such regulations incidentally affect interstate commerce, when the object of the regulation is not to that end, but is a legitimate attempt to protect the people of the State . . .

"So it may be taken as established that the mere fact

that interstate commerce is indirectly affected will not prevent the State from exercising its police power, at least until Congress, in the exercise of its supreme authority, regulates the subject. Furthermore, this regulation cannot be declared invalid if within the range of the police power, unless it can be said that it has no reasonable relation to a legitimate purpose to be accomplished in its enactment; and whether such regulation is necessary in the public interest is primarily within the determination of the legislature, assuming the subject to be a proper matter of state regulation."

Since this decision a number of cases have followed the same reasoning, attention being particularly directed to Town of Green River v. Bunger, 50 Wyo. 52, 58 P. 2d 456, and Breard v. City of Alexandria, 341 U. S. 622 (1951). In the latter case, dealing with an ordinance similar to that dealt with in the Green River case, the United States Supreme Court, in an opinion delivered by Justice Reed, held that such an ordinance does not violate the commerce clause, does not deprive peddlers and canvassers of their livelihood nor unconstitutionally abridge freedom of speech or of the press.

We see no occasion to treat further of this part of the problem, for the present ordinance is much less stringent than the so-called Green River ordinance and is equally applicable to both residents of this State and nonresidents thereof.

The case of Larsen v. City of Colorado Springs, 142 F. Supp. 871 (1956), is, however, worthy of note because of the factual situation presented in that case and its similarity to the one now before us.

Appellants were salesmen and solicitors in the employ of Kaufman Window Company. As employes of the company it was their practice to visit various homes in Colorado Springs and request an appointment with the occupants of the house in order to dis-

cuss possible sales and purchases of one or more of their products. If it was indicated there was no interest in the matter, the agent pursued it no further. If interest was expressed, an appointment was made. In no event was there a sale attempted on the occasion of the first visit, which had as its only purpose the arrangement of an appointment. The court discusses the case of Town of Green River v. Bunger, supra, in which the factual situation is somewhat the same and approves of the language of the court in that case to the following effect:

" 'We should not give the ordinance a construction that will permit solicitors to create the annoyance by entering homes for the purpose of soliciting orders, and then evade the penalty by showing that all they asked for in the beginning was an invitation to solicit orders. The solicitation of the invitation was not a purpose in itself, but a step in carrying out the purpose to solicit orders. Defendant's conduct falls both within the reasonable meaning of the terms, and within the spirit and scope, of the ordinance. . . .' "

The court concludes, at page 874:

"In the opinion of this Court, the prohibition contained in Section 1 of the subject ordinance against 'soliciting orders for the sale of goods, wares, and merchandise . . .' adequately prohibits the conduct of these plaintiffs in their solicitation of invitations to call later to solicit orders for their employer's products."

For a complete discussion of the various cases treating of this subject, attention is directed to 35 A. L. R. 2d 355.

A further contention of defendant is to the effect that even if the municipality has the right under its police power to proscribe the practice of hawking, peddling and soliciting, that it was not properly ex-

ercised in the present case. This argument is based on the fact that defendant contends that the yearly $5 license fee charged to each peddler or solicitor is unreasonable, in that it is more than sufficient to cover the cost to the municipality of the enforcement of the ordinance.

The ordinance requires that the applicant for a license apply to the chief of police of Bensalem Township stating upon such application his name, address, previous criminal record, if any, the name and address of the person for whom he works, if any, the type or types of article, devices, subscription, contribution, service or contract which he desires to sell or for which he wishes to solicit within the township, the length of time for which he wishes to be licensed, the type of vehicle he uses, if any, its registration number, and the number of helpers he has.

It must be clear that in addition to the clerical work imposed upon the chief of police or his designated subordinate, the infiltration into the local community of strangers, in considerable number, naturally augments and increases the duties of the police force. It was testified that since the ordinance went into effect in August of 1954 there have been over 400 applications for the licenses in question. In some cases an investigation is made as to any possible criminal record of the applicant, and in some cases the license after investigation is revoked because of improper practices.

From the facts we cannot come to a conclusion that the receipts arising out of the licenses are so far in excess of the cost of enforcing the ordinance as to compel the inference that it is a revenue measure and therefore unlawful. On the contrary, we are convinced that the license fee charged is in no wise disproportionate to the burden cast upon the police force in the

enforcement of the ordinance and therefore that it is not an unreasonable charge.

"It is incumbent on the party who alleges the invalidity of an ordinance upon the ground of unreasonableness to aver and prove the facts that make it so": Kittanning Borough v. American Natural Gas Company, 239 Pa. 210, 213; William Laubach & Sons v. Easton Bon Ton Company, 347 Pa. 542, 548; Adams v. New Kensington, 357 Pa. 557, 561.

We come next to the authority of the township to regulate and punish solicitation by ordinance. This court has heretofore held that any municipal corporation has only such powers as have been expressly granted it by the legislature, or those necessarily or fairly implicit in or incidental thereto, or those essential to its declared objects and purposes, and also that second class townships, having no general grant of police powers as do other types of municipalities, are particularly limited in their legislative authority: In re Falls Township Trailer Ordinance, 84 D. & C. 199; Commonwealth v. Barnhardt, 12 D. & C. 2d 255.

We must therefore seek for such express authority among the provisions of The Second Class Township Law of May 1, 1933, P. L. 103, as amended. By Clause XLVII of section 702 of the code, made effective May 24, 1951, P. L. 370, and amended July 2, 1953, P. L. 354, 53 PS §65747, such townships are authorized: "To take all needful means for securing the safety of persons or property within the township, including the control of disorderly practices."

The purpose of ordinances dealing with peddling and soliciting is twofold. They are designed both to protect the resident of the municipality from fraud and deceitful practices and also to protect him against the commission of crimes. A discussion of the various statutes dealing with the subject of peddlers is con-

tained in Haller Baking Company v. Rochester
Borough, 118 Pa. Superior Ct. 501. Reference to these
statutes discloses that from the earliest times this
twofold purpose was in contemplation when the stat-
utes were enacted. Thus in the Act of 1730 the pre-
amble points out the evils to be eliminated and the type
of person at which the act was aimed. These persons
were described as "idle and vagrant persons . . . who
under the color of selling their wares and merchan-
dise have entered into the houses of many honest and
sober people in the absence of the owner or owners of
said houses and committed felonies or misdemeanors".
Section 1 of the Act of March 30, 1784, P. L. 99,
declares: ". . . many idle and vagrant persons may
come into this state, and under pretence of being
hawkers or pedlars, may greatly impose upon many
persons . . . and also may commit felonies and other
misdemeanors". In Commonwealth v. Brinton, 132
Pa. 69, it states that the purpose of the legislation
"was the protection of society from the lawless, able-
bodied wanderer, whose presence is a source of appre-
hension in any community".

It would appear therefor that the regulation of ped-
dlers and solicitors falls within such an area of public
safety that the township may enforce needful and
reasonable ordinances in reference thereto, for such
ordinances would clearly appear to be an attempt to
secure the safety of person and property within the
township.

Such ordinances, however, must not be in conflict,
that is to say, be contradictory or inconsistent with
the statutes of the Commonwealth, for if they are in
such conflict they are invalid: Bussone v. Blatchford,
164 Pa. Superior Ct. 545; Commonwealth v. Bauer,
24 Dist. R. 210; Zeloyle v. Bettor, 371 Pa. 546; Grant
v. Philadelphia, 148 Pa. Superior Ct. 47.

The legislature by the Act of March 22, 1862, P. L. 161, prohibited hawking and peddling in Bucks County. This statute deals specifically with the activities of hawkers and peddlers and avoids by its wordage or by implication any reference to the practice of soliciting orders. Neither by the definition contained in the ordinance itself nor by the common and accepted meaning of the words was defendant, in the instant case, a hawker or a peddler. " 'A hawker is one who sells goods by outcry through the streets. . . . In common acceptance, a peddler is one who carries about on his person or in a vehicle small articles which he endeavors to sell by solicitation of persons in the street or from house to house' ": Haller Baking Company v. Rochester Borough, 118 Pa. Superior Ct. 501, 507. See also Commonwealth v. Gardner, 133 Pa. 284.

Solicitation as defined in the ordinance and in common usage contemplates the "seeking or taking of contracts or orders for any goods, wares or merchandise for future delivery". We therefore find no conflict between the statute in question and the ordinance in respect to those provisions of the ordinance *which deal with solicitation,* for defendant in the instant case could not have been successfully prosecuted under the local statute. There is no impropriety in the passage of an ordinance which deals with the same subject matter of the statute where the ordinance and statute are not in conflict: " '. . . where the legislature has assumed to regulate a given course of conduct by prohibitory enactments, a municipal corporation with subordinate power to act in the matter may make such additional regulations in aid and furtherance of the purpose of the general law as may seem appropriate to the necessities of the particular locality and which are not in themselves unreasonable' ": Western

Pennsylvania Restaurant Association v. Pittsburgh, 366 Pa. 374, 381. See also Warren v. Philadelphia, 382 Pa. 380; Brazier v. Philadelphia, 215 Pa. 297.

Since solicitation has not been proscribed by the act of assembly this field would appear to be a proper area of regulation by the municipality. From the standpoint of control of the potential criminal, the danger of having strangers visit private residences is as real whether the ostensible motive of the person be to sell on the spot or make delivery in the future. As was said in Martin v. City of Struthers, 319 U. S. 141, p. 144: ". . . burglars frequently pose as canvassers, either in order that they may have a pretense to discover whether a house is empty and hence ripe for burglary, or for the purpose of spying out the premises in order that they may return later. . . ."

This opinion should not be construed as approval of the ordinance in its entirety, especially those sections dealing with hawkers and peddlers, for defendant is not affected by those sections of the ordinance, and therefore not in a position to require us to pass upon those portions of the ordinance: Commonwealth v. Paul, 177 Pa. Superior Ct. 289, 293.

Neither are we passing upon and approving the method by which this prosecution was instituted and the appeal taken, as the better practice would appear to require the prosecution to be instituted in the name of the township, and the appeal taken to the court of common pleas. If the method employed in the present case is irregular, which we do not explicitly find, such irregularities have been waived by the parties.

And now, to wit, June 28, 1957, defendant, Russell D. Harrar, Jr., is adjudged and found to be guilty of violation of the ordinance of Bensalem Township referred to in this opinion and is directed to pay a fine of $50 and the costs of prosecution.