## BACON *v.* WALKER.

ERROR TO THE SUPREME COURT OF THE STATE OF IDAHO.

No. 147. Argued January 10, 1907.—Decided February 4, 1907.

The police power of a State embraces regulations designed to promote the public convenience or the general prosperity as well as those to promote public health, morals or safety; it is not confined to the suppression of what is offensive, disorderly or unsanitary, but extends to what is for the greatest welfare of the State.

Fixing in a police regulation, otherwise valid, the distance from habitations within which an occupation cannot be carried on is a legislative act with which the courts can only interfere in a case clearly of abuse of power.

A classification in grazing countries of sheep, as distinguished from other cattle, is not unreasonable and arbitrary in a regulation regarding the use of public lands within the meaning of the equal protection clause of the Fourteenth Amendment.

Sections 1210, 1211, Revised Statutes of Idaho, prohibiting the herding and grazing of sheep on, or within two miles of, land or processory claims of persons other than the owner of the sheep, having been construed by the highest court of that State as not affecting the right of the owner of sheep to graze them on his own lands but only on the public domain, is not unconstitutional as depriving the owner of sheep of his property without due process of law because he cannot pasture them on public domain, or as an arbitrary and unreasonable discrimination against the owners of sheep, as distinguished from other cattle, and is a proper and reasonable exercise of the police power of the State.

81 Pac. Rep. 155, affirmed.

THE facts are stated in the opinion.

Mr. S. M. Stockslager, with whom Mr. W. E. Borah, Mr. Frank T. Wyman and Mr. John C. Rice were on the briefs, for plaintiffs in error in this case and in No. 81 argued simultaneously herewith:[1]

It is the duty of the courts to prevent the exercise of arbitrary and unreasonable discriminations made under the color of the police power, though that power from its nature is not susceptible of any exact definition or limitation. It is well settled that the courts will interfere in proper cases. *Gulf, Col. & S. F. Ry.* v. *Ellis,* 165 U. S. 150; *Lawton* v. *Steele,* 152 U. S. 133.

The exercise of the police power must be confined to the imposition of those restrictions and burdens which are necessary to promote the general welfare, that is, to prevent the infliction of any public injury. Tiedman on State and Federal Control of Persons & Property, 505. The restraint must not be disproportionate to the danger. Freund on Police Power, 138, 482, 705.

[1] See p. 320, *post.*

With these limitations of the police power in view, it will be seen that the statute in question transcends the rightful exercise of that power. The legislature has discriminated against a long established and legitimate industry, and has assumed the right to arbitrarily give to the owner of a dwelling house on a possessory claim the right to recover damages for herding or grazing sheep upon the lands of the United States, in which he has no claim whatever.

As said in *Bedford* v. *Houtz,* 133 U. S. 320, there is an implied license, growing out of long-established custom to use the public lands of the United States for the grazing of domestic animals. See *Kelly* v. *Rhoades,* 188 U. S. 1.

When a calling is not dangerous, it cannot be subjected to any police regulation whatever which does not fall within the power of taxation. Freund on Police Power, *supra.* Herding or grazing of sheep is not dangerous to the public, either directly or indirectly.

There is no reason for the arbitrary limit of two miles, and its imposition is therefore unjust and unlawful. *New York Sanitary Utilization Co.* v. *New York,* 61 N. Y. App. 106, cited in 8 Cyc., 1061.

There is no proper reason for the discrimination between the herding of sheep and the grazing or feeding of cattle, horses, hogs or poultry. This discrimination is not based on any difference which would make the sheep industry amenable to any restrictions, under the police power, not imposed upon the others named. McGehee on Due Process of Law, 306; *Yick Wo.* v. *Hopkins,* 118 U. S. 356; *Plessy* v. *Ferguson,* 163 U. S. 550.

There was no appearance or brief for defendant in error in this case or in No. 81.

Mr. Justice McKenna delivered the opinion of the court.

This action involves the validity, under the Constitution

of the United States, of the following sections of the Revised
Statutes of the State of Idaho: ·

"SEC. 1210. It is not lawful for any person owning or having
charge of the sheep to herd the same, or permit them to be
herded on the land or possessory claims of other persons, or
to herd the same or permit them to graze within two miles
of the dwelling house of the owner or owners of said possessory
claim.

"SEC. 1211. The owner or agent of such owner of sheep
violating the provisions of the last section, on complaint of,
the party or parties injured before any justice of the peace
for the precinct where either of the interested parties may
reside, is liable to the party injured for all damages sustained;
and if the trespass be repeated, is liable to the party injured
for the second and every subsequent offense in double the
amount of damages sustained."

Defendants in error under the provision of those sections
brought this action, in the Justice's Court of Little Camas
Precinct, Elmore County, State of Idaho, for the recovery of
$100 damages alleged to have accrued to them by the viola-
tion by plaintiff in error of the statutes, and obtained judg-
ment for that sum. The judgment was successively affirmed
by the District Court for the county of Elmore and the Su-
preme Court of the State. 81 Pac. Rep. 155. The case was
then brought here.

It was alleged in the complaint of defendants in error, who
were plaintiffs in the trial court, that plaintiff in error caused
his sheep, about three thousand in number, to be herded upon
the public lands within two miles of the dwelling house of
defendant in error. The answer set up that the complaint
did "not state a cause of action other than the violation of
sections 1210 and 1211 of the Revised Statutes of the State
of Idaho," and that said sections were in violation of the
Fourteenth Amendment of the Constitution of the United
States. The specifications of the grounds of the unconstitu-
tionality of those sections were in the courts below and are

in this court: (1) that plaintiff in error has an equal right to pasture with other citizens upon the public domain, and that by imposing damages on him for exercising that right he is deprived of his property without due process of law; (2) that a discrimination is arbitrarily and unlawfully made by the statutes between citizens engaged in sheep grazing on the public domain and citizens engaged in grazing other classes of stock.

These grounds do not entirely depend upon the same considerations. The first denies to the State any power to limit or regulate the right of pasture asserted to exist; the other concedes such power, and attacks it only as it discriminates against the grazers of sheep. We speak only of the right to pasture, because plaintiff in error does not show that he is the owner of the land upon which his sheep grazed, and what rights owners of land may have to attack the statute we put out of consideration. *Hatch* v. *Reardon, ante,* p. 152. But we may remark that the Supreme Court of Idaho said in *Sweet* v. *Ballentyne,* 8 Idaho, 431, 440: "These statutes [sections 1210, 1211, quoted above] were not intended to prevent owners from grazing sheep upon their own lands, although situated within two miles of the dwelling of another." Is it true, therefore, even if it be conceded that there is right or license to pasture upon the public domain, that the State may not limit or regulate the right or license? Defendants in error have an equal right with plaintiff in error, and the State has an interest in the accommodation of those rights. It may even have an interest above such accommodation. The laws and policy of a State may be framed and shaped to suit its conditions of climate and soil. Illustrations of this power are afforded by recent decisions of this court. In *Clark* v. *Nash,* 198 U. S. 361, a use of property was declared to be public which, independent of the conditions existing in the State, might otherwise have been considered as private. So also in *Strickley* v. *Highland Boy Gold Mining Company,* 200 U. S. 527. In the first case there was a recognition of the power of the State to deal with and accommodate its laws to the

conditions of an arid country and the necessity of irrigation
to its development. The second was the recognition of the
power of the State to work out from the conditions existing
in a mining region the largest welfare of its inhabitants. And
again, in *Offield* v. *The New York, New Haven & Hartford
Railroad Company*, 203 U. S. 372, the principle of those cases
was affirmed and applied to conditions entirely dissimilar, and
it was declared that it was competent for a State to provide
for the compulsory transfer of shares of stock in a corporation,
the ownership of which stood in the way of the increase of
means of transportation, and the public benefit which would
result from that. Of pertinent significance is the case of
*Ohio Oil Company* v. *Indiana*, 177 U. S. 190. There a statute
of the State of Indiana was attacked, which regulated the
sinking, maintenance, use and operation of natural gas and
oil wells. The object of the statute was to prevent the waste
of gas. The defendants in the action asserted against the
statute the ownership of the soil and the familiar principle
that such ownership carried with it the right to the minerals
beneath and the consequent privilege of mining to extract
them. The principle was conceded, but it was declared in-
applicable, as ignoring the peculiar character of the substances,
oil and gas, with which the statute was concerned. It was
pointed out that those substances, though situated beneath
the surface, had no fixed *situs*, but had the power of self-
transmission. No one owner, it was therefore said, could
exercise his right to extract from the common reservoir in
which the supply was held without, to an extent, diminishing
the source of supply to which all the other owners of the surface
had to exercise their rights. The waste of one owner, it was
further said, caused by a reckless enjoyment of his right,
operated upon the other surface owners. The statute was sus-
tained as a constitutional exercise of the power of the State,
on account of the peculiar nature of the right and the objects
upon which it was exerted, for the purpose of protecting all
of the collective owners.

These cases make it unnecessary to consider the argument of counsel based upon what they deem to be the limits of the police power of a State, and their contention that the statute of Idaho transcends those limits. It is enough to say that they have fallen into the error exposed in *Chicago, Burlington & Quincy Railway Company* v. *Drainage Commissioners,* 200 U. S. 561, 592. In that case we rejected the view that the police power cannot be exercised for the general well-being of the community. That power, we said, embraces regulations designed to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals or the public safety. We do not enter, therefore, into the discussion whether the sheep industry is legitimate and not offensive. Nor need we make extended comment on the two-mile limit. The selection of some limit is a legislative power, and it is only against the abuse of the power, if at all, that the courts may interpose. But the abuse must be shown. It is not shown by quoting the provision which expresses the limit. The mere distance expressed shows nothing. It does not display the necessities of a settler upon the public lands. It does not display what protection is needed, not from one sheep or a few sheep, but from large flocks of sheep, or the relation of the sheep industry to other industries. These may be the considerations that induced the statutes, and we cannot pronounce them insufficient on surmise or on the barren letter of the statute. We may refer to *Sifers* v. *Johnson,* 7 Idaho, 798, and *Sweet* v. *Ballentyne,* 8 Idaho, 431, for a statement of the practical problem which confronted the legislature and upon what considerations it was solved. We think, therefore, that the statutes of Idaho are not open to the objection that they take the property of plaintiff in error without due process of law, and pass to the consideration of the charge that they make an unconstitutional discrimination against the sheep industry.

Counsel extend to this contention the conception of the police power which we have just declared to be erroneous, and,

enumerating the classes discriminated in favor of as cattle, horses, hogs, and even poultry, puts to question. whether in herding or grazing sheep "there is more danger to the public 'health, comfort, security, order or morality' than the classes of animals and fowls above enumerated." . "What," counsel ask, "are the dangers to the public growing out of. this industry that do not apply with equal force to the others? Does the herding or grazing of sheep necessarily, and because of its unwarrantable character, work an injury to the public? And, if dangerous in any degree whatever, are the other classes which are omitted and in effect, excepted entirely free from such danger, or do such exceptions tend to reduce the general danger?" Contemplating the law in the aspect expressed in these questions, counsel are unable to see in it anything but unreasonable and arbitrary discrimination. This view of the power of the State, however, is too narrow.. That power is not confined, as we have said, to the suppression of what is offensive, disorderly or unsanitary. It extends to so dealing with the conditions which exist in the State as to bring out of them the greatest welfare of its people. This is the principle of the cases which we have cited.

But the statutes have justification on the grounds which plaintiff in error urges as determinative, and on those grounds they were sustained by the Supreme Court of the State. They were deliberate enactments, made necessary by and addressed to the conditions which existed. They first (1875) had application only to three counties, while Idaho was a Territory. They were subsequently extended to two other counties and were made general in 1887.. They were continued in force by the state constitution. *Sweet* v. *Ballentyne, supra*. The court said in the latter case:

"It is a matter of public history in this State that conflicts between sheep owners and cattle men and settlers were of frequent occurrence, resulting in violent breaches of the peace. It is also a matter of public history of the State that sheep are not only able to hold their own on the public ranges with other

livestock, but will in the end drive other stock off the range, and that the herding of sheep upon certain territory is an appropriation of it almost as fully as if it was actually inclosed by fences, and this is especially true with reference to cattle. The legislature did not deem it necessary to forbid the running at large of sheep altogether, recognizing the fact that there are in the State large areas of land uninhabited, where sheep can range without interfering with the health or subsistence of settlers or interrupting the public peace. The fact was also recognized by the legislature that, in order to make the settlement of our small isolated valleys possible, it was necessary to provide some protection to the settler against the innumerable bands of sheep grazing in this State."

And the court pointed out that it was not the purpose or effect of the statutes to make discrimination between sheep owners and owners of other kinds of stock, but to secure equality of enjoyment and use of the public domain to settlers and cattle owners with sheep owners. To defeat the beneficent objects of the statutes, it was said, by holding their provisions unconstitutional would make of the lands of the State "one immense sheep pasture." And further: "The owners of sheep do not permit them to roam at will, but they are under the immediate control of herders, who have shepherd dogs with them, and wherever they graze they take full possession of the range as effectually as if the lands were fenced. . . . It is a matter of common observation and experience that sheep eat the herbage closer to the ground than cattle or horses do, and, their hoofs being sharp, they devastate and kill the growing vegetation wherever they graze for any considerable time. In the language of one of the witnesses in this case: 'Just as soon as a band of sheep passes over everything disappears, the same as if fire passing over it.' It is a part of the public history of this State that the industry of raising cattle has been largely destroyed by the encroachments of innumerable bands of sheep. Cattle will not graze, and will not thrive, upon lands where sheep are grazed to any great extent."

These remarks require no addition. They exhibit the con-ditions which existed in the State, the cause and purpose of the statutes which are assailed, and vindicate them from the accusation of being an arbitrary and unreasonable discrimination against the sheep industry.

*Judgment affirmed.*

MR. JUSTICE BREWER and MR. JUSTICE PECKHAM dissent.