## HANLEY v. MOODY et al.
### No. 3273—529.

District Court, N. D. Texas, Dallas Division.
March 14, 1930.

Smithdeal, Shook, Spence & Bowyer, of Dallas, Tex., for plaintiff.

H. Grady Chandler, Asst. Atty. Gen., and Robert A. Stuart, of Fort Worth, Tex., for defendants.

Before FOSTER, Circuit Judge, and ATWELL and DAWKINS, District Judges.

ATWELL, District Judge.

In May, 1929 (Gen. & Sp. Laws Tex. 41st Leg., 1st called Sess., c. 104), the Texas Legislature passed a law defining and regulating and taxing emigrant agents. A nonresident employer of labor attacked the act in this court and was granted an injunction.

In June the second called session of the Legislature amended article 7047 of the Revised Civil Statutes of Texas of 1925 by adding section 40 and by repealing the May act (Gen. & Sp. Laws Tex. 41st Leg., 2d Called Sess., c. 11), and also passed a bill (Gen. & Sp. Laws Tex. 41st Leg., 2d called Sess., c. 96) which contained various provisions with reference to such agents. This new legislation provided for an occupation tax of a thousand dollars to be paid to the state, and for occupation taxes ranging from a hundred to three hundred dollars for each county.

The plaintiff claims that he is engaged in the business of securing employment for the unemployed; and, particularly in securing, under contract, employees for nonresident employers; such employers residing in the Middle West and engaging in the sugar beet industry and other avocations which require a multiplicity of laborers during certain seasons of the year when such laborers are idle in Texas. That often such laborers are ignorant and require the services of a person to gather them into train load lots, secure transportation, and go with them from Texas, to the states in which they are to work. He says that these new laws will prevent him from following his avocation as the tax is prohibitory, and that the giving of the bond

and the provisions relating thereto in section 4 of the act are unconstitutional, in that they deprive him of the right to contract; and that they are in violation of interstate commerce. The state answers that six agents have already complied and have been licensed and that the law is valid.

The exact dimensions of police power remain undetermined. This is well. The promotion of health, safety, morals, or the public welfare is within the vested power of the lawmaking body, and that body shall judge what is for the good of the commonwealth for which it acts. Bacon v. Walker, 204 U. S. 311, 27 S. Ct. 289, 51 L. Ed. 499. A recognized limitation is that there must be no trespass on the rights and powers vested in the national government. In re Heff, 197 U. S. 488, 25 S. Ct. 506, 49 L. Ed. 848.

In Brazee v. Michigan, 241 U. S. 340, 36 S. Ct. 561, 60 L. Ed. 1034, it was held that employment agencies are subject to police regulation and control. While the business of securing honest work for the unemployed is a useful and legitimate business, it is subject to regulation by the state, Adams v. Tanner, 244 U. S. 590, 37 S. Ct. 662, 61 L. Ed. 1336, L. R. A. 1917F, 1163, Ann. Cas. 1917D, 973; but a provision which denies them the right to charge a fee for such service is in violation of the Fourteenth Amendment.

It having been determined that power vests in the state to regulate a court may not declare occupation taxes unreasonable when the facts show that a number of such agents have paid the taxes and complied with the law. See Williams v. Fears, 179 U. S. 270, 21 S. Ct. 128, 45 L. Ed. 186.

We have considered the case of Hirshfield v. City of Dallas, 29 Tex. App. 242, 15 S. W. 124, and decline to follow it. In that case the Court of Appeals of Texas held an ordinance of the city of Dallas, which fixed a license tax of $500 per year upon a ticket broker, to be prohibitory.

While the tax imposed upon the emigrant agent is large, and while the plaintiff alleges that he is unable to pay it, we are not prepared to enjoin it as an illegal and oppressive exercise of the state's sovereign power.

The second question revolves around the provisions of section 4 of the senate bill (Gen. & Sp. Laws Tex. 41st Leg., 2d called Sess., c. 96). The act is in fact regulatory. It (section 1) defines the term "emigrant agent" to mean "every person, firm, corporation or association of persons engaged in the business of hiring, enticing, or soliciting laborers in this State to be employed beyond the limits of this State and is also meant to include every person, firm, partnership, corporation or association of persons maintaining an office to hire, entice, or solicit laborers to be employed beyond the limits of this State." It (section 1) also includes every person who, as an independent contractor, or otherwise than as an agent of a duly licensed emigrant agent, procures or undertakes to procure, or assists in procuring, laborers for an emigrant agent. And that every emigrant agent shall be held to be doing business in each and every county where he in person, or through an agent, hires, entices, or solicits any laborer to be employed beyond the limits of the state. It (section 2) then provides that before the entering upon such business he shall secure a state license from the Commissioner of Labor Statistics. The application for such license has a number of requisites. He shall pay such commissioner an annual license fee of $10. Before such license may issue the applicant must have paid the occupation tax or taxes provided for in section 40 of the 1929 occupation tax amendment (Gen. & Sp. Laws Tex. 41st Leg., 2d Called Sess., c. 11). He shall also make a bond in the sum of $5,000, by a surety company doing business in Texas, which bond shall guarantee that the agent will comply with section 4, which provides that: "Any emigrant agent who furnishes, provides or arranges for transportation out of this State for any laborer hired by him to be employed beyond the limits of this State shall furnish, provide or arrange for return transportation to this State for such laborer upon written demand of such laborer dated not exceeding thirty days after the termination of the contract of employment procured for such laborer by such emigrant agent; and such emigrant agent shall, at the time he hires such laborer, give to him a statement in writing that he will furnish, provide or arrange for such return transportation as above provided." Any laborer may waive his rights under such bond by an instrument of writing signed by him and acknowledged by him before the county judge of the county in which he is residing at the time he is hired.

The act also authorizes the inspection of all books and records kept by such agent. There are many other provisions.

The act (section 3) declares that any emigrant agent who engages in the business, without having secured the license, shall be guilty of a misdemeanor and shall be punished upon conviction by a fine not exceeding

$500, or by imprisonment not exceeding six months, or by both such fine and imprisonment.

Section 7 of the act (chapter 96) provides that: "This Act shall also apply in all its terms and provisions to every other person, firm, corporation, maritime agency or association of persons hiring, enticing or soliciting laborers to be employed by him beyond the limits of this State, but not maintaining an office therefor, except that such other person, firm, corporation, maritime agency, or association of persons as used in this section, shall not be required to pay the occupation taxes in order to procure a license but shall pay to the Labor Commissioner the annual license fee provided by this Act, and shall perform all the other provisions of this Act, * * * this section shall not apply to a person where the number to be employed by such person shall not exceed ten employees."

It seems to us that section 4 is repugnant to the Constitution of both the state and the nation. Under its terms one who furnishes transportation to eleven or more unemployed inhabitants of Texas, that they may work in some other state, is not permitted to make his own contract. He is required to give a bond that he will furnish to each of such laborers return transportation. This not only applies to the employment agent, but it likewise applies to the employer. We know of no power in either the national or state legislative bodies to compel an individual citizen to make any particular sort of a contract. It can hardly be defended upon the theory that the unemployed citizen is so helpless and so much above or below constitutional guaranties that he and the man who assists him in securing work must enter into an agreement as provided by law, otherwise the unemployed must remain unemployed. The general right to make a contract in relation to one's business is a part of the liberty protected by the Fourteenth Amendment. Both the Fifth and Fourteenth Amendments recognize liberty and property as coexistent human rights and the state is barred from unwarranted interference with either.

Attempts of this sort have been held invalid by the Supreme Court of Texas, and by the Supreme Court of the nation. Hess v. Denman Lumber Co. (Tex. Civ. App.) 218 S. W. 162; Williams v. Baldwin (Tex. Com. App.) 228 S. W. 554; Culberson v. Ashford (Tex. Sup.) 18 S.W.(2d) 585; Real Silk Hosiery Mills v. Portland, 268 U. S. 325, 45 S. Ct. 525, 69 L. Ed. 982. See, also,

Adkins v. Children's Hospital, 261 U. S. 525, 43 S. Ct. 394, 67 L. Ed. 785, 24 A. L. R. 1238; Coppage v. Kansas, 236 U. S. 14, 35 S. Ct. 240, 59 L. Ed. 441, L. R. A. 1915C, 960; Lochner v. New York, 198 U. S. 45, 25 S. Ct. 539, 49 L. Ed. 937, 3 Ann. Cas. 1133; Tyson v. Banton, 273 U. S. 418, 47 S. Ct. 426, 71 L. Ed. 718, 58 A. L. R. 1236; Jay Burns Baking Co. v. Bryan, 264 U. S. 504, 44 S. Ct. 412, 68 L. Ed. 813, 32 A. L. R. 661; Ribnik v. McBride, 277 U. S. 350, 48 S. Ct. 545, 72 L. Ed. 913, 56 A. L. R. 1327. This case determined that the business of an employment agent is not one "affected with a public interest," and under the due process clause of the Fourteenth Amendment, a state cannot fix the fees which such an agent may charge for his services. A power to require a license for, and to regulate the conduct of a business, is distinct from the power to fix prices.

We conclude that the showing made at this time is sufficient to justify the granting of a temporary injunction to restrain the enforcement of the provisions of section 4, but deny any restraint in so far as the occupation taxes are concerned.