## No. 14,467.

McCormick *v.* City of Montrose.

(99 P. [2d] 969)

Decided December 11, 1939. Rehearing denied March 4, 1940.

494

Messrs. MOYNIHAN-HUGHES, Mr. R. H. WALKER, Messrs. BAMBERGER & FEIBLEMAN, for plaintiff in error.

Mr. WALTER P. CROSE, for defendant in error.

Messrs. NOURSE & DUTCHER, amicus curiae.

Messrs. LEE, DOUD & GRIFFITH, amicus curiae on rehearing.

*En Banc.*

MR. JUSTICE YOUNG delivered the opinion of the court.

PLAINTIFF in error, who was defendant in the county court and will be so designated herein, was first convicted in the municipal court of the city of Montrose for violation of a city ordinance and on appeal to the county court of Montrose county was again convicted in that court and fined in the sum of fifty dollars. Defendant seeks a reversal of the county court's judgment.

In the county court the case was tried on stipulated facts. The stipulation was as follows:

"That the defendant, Leo W. McCormick, did on or about the 8th day of June, A.D. 1938, within the City of Montrose, County of Montrose, State of Colorado, solicit orders for the sale by defendant of Real Silk hosiery in private residences within said City of Montrose, Colorado, without request or invitation of the people occupying said residences. No notice of any kind warning solicitors not to call on or solicit were posted or displayed on any of said residences. Defendant was not discourteous and in so soliciting said orders did not act in a manner offensive to the residents so solicited.

"Defendant while so acting as aforesaid was solicitor for the Real Silk Hosiery Mills, Incorporated, of Indianapolis, State of Indiana, a foreign corporation in the State of Colorado, and was attempting to take orders for silk hose and merchandise manufactured by said corporation. If and when said orders were received from the residents so solicited the habit, custom and duty of defendant was to forward said orders to Indianapolis where the same were filled and shipped to the address of the person whose name was signed to said order.

"It is hereby further agreed that defendant and Mrs. C. L. Walker and other persons who are owners or occupants of private residences in the City of Montrose, Colorado, would testify to the foregoing if placed upon the witness stand to testify in this cause.

"That upon complaint of Mrs. C. L. Walker and other owners or occupants of private residences in the City of Montrose, Colorado, a complaint was filed with the police magistrate of the City of Montrose, Colorado.
\* \* \*

"That the police magistrate did thereafter issue his warrant [set forth in full in the stipulation].

"That thereafter the said Leo W. McCormick was apprehended \* \* \* that said Leo W. McCormick pleaded not guilty \* \* \* and upon being found guilty \* \* \* was fined in the amount of Fifty Dollars ($50.00). Appeal bond was fixed in the amount of one hundred fifty dollars ($150.00).

"The purpose of this stipulation is to record an agreed statement of facts, \* \* \* and it is agreed that this stipulation, together with a certified copy of the City Ordinance mentioned in the complaint and warrant together with the transcript from the magistrate court and the complaint and warrant in this matter, are hereby submitted to the Court to which this cause has been appealed by the defendant, as and for evidence in this cause and further, to permit the Court having jurisdiction of the trial of this cause to determine from such

stipulation, ordinance, transcript, complaint, and warrant whether or not the said ordinance, so far as applicable to the foregoing facts is constitutional."

The mentioned ordinance in so far as material to a determination of the matters here presented is as follows:

"Section 1. The practice of going in and upon private residences in the City of Montrose, Colorado, by solicitors, peddlers, hawkers, itinerant merchants, and transient vendors of merchandise, not having been requested or invited so to do by the owner or owners, occupant or occupants of said private residence, for the purpose of soliciting orders for the sale of goods, wares, and merchandise, or for the purpose of disposing of or peddling or hawking the same, is hereby declared to be a nuisance, and punishable as such nuisance as a misdemeanor.

"Section 2. The Police of the City of Montrose, Colorado, are hereby required and directed to suppress the same and to abate such nuisance as it is described in the first section of this ordinance.

"Section 3. Any person convicted of perpetrating a nuisance as described and prohibited in the first section of this ordinance upon conviction thereof, shall be punished by a fine in the sum of not more than $100.00 or by imprisonment in the City Jail for a period of not more than ninety days."

Defendant in his brief sets forth the issues involved in the case as follows:

"I. There could be no violation of the ordinance if there was an implied invitation to the solicitor; and the court was in error in not holding that the facts before it showed such an implied invitation and in not admitting additional evidence offered to show such implied invitation.

"II. The City of Montrose did not possess the power to enact the ordinance.

"III. The ordinance, even if it were otherwise valid, cannot constitutionally apply to the transactions of the plaintiff in error, which were in interstate commerce.

"IV. The ordinance is unreasonable and therefore void.

"V. The ordinance does not constitute a valid exercise of the police power and violates the Fourteenth Amendment to the Constitution of the United States and the Bill of Rights of the Constitution of Colorado."

These issues are raised by sufficient assignments of error and in its brief the city joins issue on each and every specified proposition. We shall accept the statement of the issues thus agreed upon by the parties as an outline for the announcement of the principles of law that in our opinion govern in this case.

The first proposition advanced, namely, that there was an implied request or invitation which takes the case out of the ordinance, is not tenable. The stipulated facts do not support the argument presented to sustain defendant's position. If under the ordinance, as defendant contends, either an express or an implied invitation is sufficient to relieve the solicitor from a penalty, the stipulation "that the defendant * * * did on or about the 8th day of June, A.D. 1938 within the City of Montrose * * * solicit orders for the sale by defendant of Real Silk hosiery in private residences within the City of Montrose * * * without request or invitation of the people occupying said residences" is sufficiently broad to negative either express or implied invitation. Defendant, after becoming a party to such stipulation, offered to prove that the Real Silk Hosiery Mills, his employer, "has been doing business in the City of Montrose for more than ten years last past and in a similar manner for which the defendant was arrested." Defendant was arrested under a warrant issued on a complaint charging him with the practice of soliciting in private residences without having been requested or invited so to do by the owners or occupants thereof. It appears

that the ordinance was passed in November, 1937, and the complaint was filed in June, 1938. The ordinance was passed as a police regulation. It announced the public policy of Montrose to be to penalize soliciting in residences unless in response to request or invitation of the owners or occupants thereof. What defendant's employer, the Real Silk Hosiery Mills, had done lawfully as a practice before the ordinance was passed could not be construed as an implied request or invitation by the householders to continue such practice after they, through their city council, had passed an ordinance penalizing the practice. If solicitation had been carried on by defendant, or by the company through other agents, after the ordinance was passed without first securing a request or invitation, this was purely by sufferance of those who might have enforced it, and created no right in defendant or the company to continue to violate its provisions with impunity until notified that they might no longer do so. *Colby v. Board*, 81 Colo. 344, 255 Pac. 443. We hold, therefore, that it was not error for the county court to reject defendant's offered evidence.

██ The second proposition advanced by defendant is that the city of Montrose did not possess the power to enact the ordinance. Under this may be included logically defendant's fourth and fifth propositions, which are, that the ordinance is unreasonable and therefore void, and that it violates the Fourteenth Amendment of the Constitution of the United States and the Bill of Rights of the Constitution of Colorado, in that it prevents defendant from engaging in a legitimate business and amounts to a taking of property without due process of law. If either of these two latter contentions is sound, that negatives the power of the city to pass the ordinance. The three issues, therefore, will be herein considered under the principal proposition which raises the question of the city's power to enact the ordinance.

Montrose is a home rule city with all the authority vested in such cities by article XX of the Constitution of Colorado. Inter alia, it is therein provided as follows:

"It is the intention of this article to grant and confirm to the people of all municipalities coming within its provisions the full right of self-government in both local and municipal matters and the enumeration herein of certain powers shall not be construed to deny such cities and towns, and to the people thereof, any right or power essential or proper to the full exercise of such right.

"The statutes of the state of Colorado, so far as applicable, shall continue to apply to such cities and towns, except in so far as superseded by the charters of such cities and towns or by ordinance passed pursuant to such charters."

There was in effect at the time of the adoption of this amendment, section 10, chapter 163, 1935 Colorado Statutes Annotated, granting certain powers to towns and cities, among which granted powers were the following:

"Thirteenth—To license, tax, regulate, suppress and prohibit hucksters, peddlers, pawnbrokers, keepers of ordinaries, theatrical and other exhibitions, shows and amusements, and to revoke such license at pleasure."

"Forty-fifth—To declare what shall be a nuisance and to abate the same, and to impose fines upon parties who may create, continue or suffer nuisances to exist."

"Forty-eighth—To do all acts and make all regulations which may be necessary or expedient for the promotion of health or the suppression of disease."

"Sixty-sixth—To pass all ordinances, rules, and make all regulations proper or necessary to carry into effect the powers granted to cities or towns, with such fines and penalties as the council or board of trustees shall deem proper; provided, no fine or penalty shall exceed three hundred ($300) dollars, and no imprisonment shall exceed ninety days for one offense."

It is the contention of defendant that "the power to declare, prevent, and abate nuisances does not give the municipality the power to declare that to be a nuisance which in law, as well as in fact, is not such, nor to deal with any conduct or condition not amounting to a public nuisance." The ordinance declares the inhibited conduct a nuisance and prescribes a penalty. Defendant's contention is in effect that since it is not a nuisance in fact it cannot be such in law and that if it is a nuisance in fact it is a private and not a public nuisance and that the city can declare conduct to be a nuisance and provide for its suppression only if it amounts to a public nuisance. If the conduct is a nuisance in fact and public in character it follows even under the theory of defendant, that the city, in view of the statute, had power to pass the ordinance. Sec. 10, c. 163, '35 C. S. A., supra. However, the issue of whether the ordinance may be upheld or not need not be decided by determining, and we do not determine, whether the conduct inhibited by it is technically a nuisance or whether, if it is not, it becomes such by the legislative fiat of the city council that it is a nuisance. The Twentieth Amendment to the Constitution gives home rule cities the right to exercise police power as to local matters, possibly subject to the limitation that they may not exercise police power in such manner as to interfere with the state's exercise of its police power where it has elected to deal with the same subject matter. *Denver v. Tihen,* 77 Colo. 212, 235 Pac. 777. But no conflict is here involved, and we need not and do not concern ourselves either with the existence of a limitation or its extent, if there is one. Whether there shall or shall not be soliciting in or upon private residences within the city, at least until the state has seen fit to exercise its police powers with reference to it, is a matter of local concern only. If the city has the power to penalize the conduct declared by the ordinance to be a nuisance, we think that it is immaterial that it provided that such conduct shall first be given

the name of nuisance, which defendant contends is not, and which may not be in fact, a fitting name. The real question is whether the city has the power to punish the proscribed conduct, not whether it has the right to name it.

At one time the exercise of the police power was held to be limited to those things which affected the public health, public morals, and public safety. In *Bacon v. Walker*, 204 U. S. 311, 27 Sup. Ct. 289, 51 L. Ed. 499, the Supreme Court of the United States had before it an Idaho statute as follows: "Sec. 1210. It is not lawful for any person owning or having charge of the sheep to herd the same, or permit them to be herded on the land or possessory claims of other persons, or to herd the same or permit them to graze within two miles of the dwelling house of the owner or owners of said possessory claim." In the event of a breach, the statute authorized the recovery of damages sustained for the first offense and double the amount of damages for all subsequent similar trespasses. It was contended that the enactment of the statute was beyond the scope of the police power of the state and that the law was unreasonable and arbitrary. After referring to several former decisions of the court the opinion continues as follows:

"These cases make it unnecessary to consider the argument of counsel based upon what they deem to be the limits of the police power of a State, and their contention that the statute of Idaho transcends those limits. It is enough to say that they have fallen into the error exposed in *Chicago, Burlington & Quincy Railway Company v. Drainage Commissioners*, 200 U. S. 561, 592. In that case we rejected the view that the police power cannot be exercised for the general well-being of the community. That power, we said, embraces regulations designed to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals or the public safety. We do not enter, therefore, into the discussion

whether the sheep industry is legitimate and not offensive. Nor need we make extended comment on the two-mile limit. The selection of some limit is a legislative power, and it is only against the abuse of the power, if at all, that the courts may interpose. But the abuse must be shown. It is not shown by quoting the provision which expresses the limit. The mere distance expressed shows nothing. It does not display the necessities of a settler upon the public lands. It does not display what protection is needed, not from one sheep or a few sheep, but from large flocks of sheep, or the relation of the sheep industry to other industries. These may be the considerations that induced the statutes, and we cannot pronounce them insufficient on surmise or on the barren letter of the statute. We may refer to *Sifers v. Johnson,* 7 Idaho, 798, and *Sweet v. Ballentyne,* 8 Idaho, 431, for a statement of the practical problem which confronted the legislature and upon what considerations it was solved. We think, therefore, that the statutes of Idaho are not open to the objection that they take the property of plaintiff in error without due process of law, and pass to the consideration of the charge that they make an unconstitutional discrimination against the sheep industry.

"Counsel extend to this contention the conception of the police power which we have just declared to be erroneous, and, enumerating the classes discriminated in favor of as cattle, horses, hogs, and even poultry, puts to question whether in herding or grazing sheep 'there is more danger to the public "health, comfort, security, order or morality" than the classes of animals and fowls above enumerated.' 'What,' counsel ask, 'Are the dangers to the public growing out of this industry that do not apply with equal force to the others? Does the herding or grazing of sheep necessarily, and because of its unwarrantable character, work an injury to the public? And, if dangerous in any degree whatever, are the other classes which are omitted and in effect ex-

cepted entirely free from such danger, or do such exceptions tend to reduce the general danger?' Contemplating the law in the aspect expressed in these questions, counsel are unable to see in it anything but unreasonable and arbitrary discrimination. This view of the power of the state, however, is too narrow. That power is not confined, as we have said, to the suppression of what is offensive, disorderly or unsanitary. It extends to so dealing with the conditions which exist in the State as to bring out of them the greatest welfare of its people. This is the principle of the cases which we have cited."

Having noted the fact that the police power of the states as presently recognized by the Supreme Court of the United States may be exercised "for the general well being of the community" as well as for the promotion of its peace, health, morals, and safety, it is pertinent to the issues before us to examine the foundation on which, in the absence of a prohibitory law, the right to enter upon private residence property for purposes of solicitation rests.

■ If, as contended, the right to solicit in and upon private residences rests on an implied invitation, such invitation is subject to being withdrawn at any time. Any one or more or all of the householders of Montrose might withdraw such implied consent if it exists and refuse permission to solicitors even to enter upon their premises. We know of nothing that would prevent such householders fencing their premises and locking their gates or, either individually or collectively, employing a watchman to prevent solicitors from entering upon their premises. Any attempt to enter under such circumstances clearly would be a violation of such householders' right to control the premises free from outside molestation. These facts are mentioned because it is suggested that soliciting in and upon private residences is a business, a recognized means of earning a livelihood for large numbers of people, a method of selling adopted

to the exclusion of all others by some business concerns that have built up large and lucrative businesses thereby. Granting that such is true, the business can exist only by permission of those persons on whose premises solicitation is to be made. Each, any, or all of them may withdraw permission and thus end any previously given express or implied invitation and make the solicitor a trespasser and liable as such if he attempts to continue the practice of entering the premises in the prosecution of his business activities. The ordinance here in question has this effect. It abolishes the presumption of an implied consent from a custom that may have existed for solicitors to enter upon premises uninvited and a failure of the householders to take affirmative action, as by placing on or near the entrance a sign that solicitors are not allowed, and creates a presumption of lack of consent to go upon the premises unless an invitation can be shown.

 As against the householder, one going in and upon a private residence to solicit has no right that he can protect or enforce. The moment the consent of the householder is withdrawn the right resting on such consent vanishes. Defendant concedes that, there being no prohibitory ordinance, the consent may be withdrawn by placing on the premises "the *customary* warning sign 'no solicitors allowed'." Conversely, there being such an ordinance, a request and invitation might effectively be given by displaying a sign, "Solicitors Welcome." If the display of the latter sign became "customary" this might serve as a reason for the legislative body to repeal the ordinance. Presumably, when a legislative act is passed it represents the sentiment and expresses the judgment of a majority of the citizens within the legislating governmental division or subdivision that passes the act as to the proper policy to be pursued with reference to the subject of the legislation. We may not assume in the face of the ordinance that a majority of the householders of Montrose desire to be solicited in their

own residences to buy goods. The presumption is that a majority do not. It would be a strange anomaly under our form of government if all of the citizens of a legislative unit of government might maintain, by each acting individually, the right to occupy their homes undisturbed by the ringing of the doorbells and the importunities to buy by those who would make of their residences market places, and that the same citizens acting collectively and legislatively could not declare as the public policy of the governmental unit for which they speak that they should not be disturbed for purposes of solicitation to buy in their own homes, thus making them market places against their consent. If all of the citizens of the town may so act and legislate there occurs to us no reason why a majority also directly or through elected representatives might not declare the policy, and particularly where, as in this case, the right to be disturbed by solicitors and to have market places made of their residences is preserved to those in the minority upon the mere expression of a desire that such be done, and thus indirectly there is preserved to the solicitor the full field for his activities to which he is fairly entitled—the right to solicit those who have a desire to do business with him. As was well said by Justice Campbell in *Denver v. Tihen, supra:* "This right of the state to declare its own public policy is an exercise of its inherent, indefinable police power. Among the subjects to which this police power extends are the peace and good order of society, the general welfare, the security and quiet of the people. A state cannot estop itself by grant or contract from the exercise of its police power."

The principle under discussion is similar to that involved in the so-called municipal zoning ordinances, which go further than the ordinance before us. The owner of property within specified zones is prevented from using it for other than certain purposes, even though to be so restricted may in his particular case

greatly reduce what he might otherwise be able to receive in rents or for the sale of his property. By reason of the restriction he may not be able as a practical matter to sell the property at all. Such ordinances are upheld as reasonable and as a proper exercise of a city's police power because their effect on the whole is to promote the comfort, convenience, and general welfare of the citizens of the city, or at least of the citizens within the restricted zone. *Colby v. Board, supra.*

■ The ordinance before us does not go nearly so far as those which prevent one from using his own property for business purposes. The solicitor has no property involved. The ordinance merely prevents him from making a practice of using others' residence properties for business purposes without being first requested or invited so to do. If the legislative body of a city may declare that the public welfare and convenience require that one be restricted in the use of his own property for business purposes theretofore legitimate without such action being considered capricious and arbitrary we see nothing capricious nor arbitrary in that same body declaring as a public policy that one shall not use others' property for business purposes without their consent.

The Supreme Court of Nebraska upheld as a proper exercise of the police power an ordinance providing a penalty for persons who wilfully, maliciously, or mischievously trespass upon the personal or real property of others. The court held that it was reasonable and in harmony with the established principles of the common law. *City of Brownville v. Cook,* 4 Neb. 101.

The Court of Appeals of Illinois had under consideration a city ordinance providing that, "Any person who shall within said city * * * enter any private premises against the consent of the owner or occupant thereof, or shall trespass upon any private premises * * * shall, on conviction, be fined," etc. The defendant, after being requested not to solicit for the sale of goods within a building insisted upon doing so and was proceeded

against on complaint, convicted, and fined. The court held that the ordinance was a proper and valid police regulation. *Saxton v. City of Peoria,* 75 Ill. App. 397.

An ordinance prohibiting distribution of unsolicited advertising matter to householders was held by the Supreme Court of New Jersey not unconstitutional as an unreasonable interference with the right to choose an occupation and to advertise merchandise. *Allen v. McGovern,* 12 N. J. Misc. 12, 169 Atl. 345.

We have called attention to the fact that defendant has no property right involved. He is not deprived of the right to solicit sales in the residences of those who desire to be solicited there. No discrimination is made between solicitors as to their being residents or nonresidents of the town or state or as to the kind or character of merchandise which they seek to sell. The ordinance is couched in language broad enough to include the solicitor for a foreign corporation, the solicitor for the local dealer or merchant, the blind broom peddler, and the boy seeking to sell Colliers, Liberty, or the Saturday Evening Post. It does not prevent any solicitor from soliciting or from carrying on his business anywhere except in private residences where he has not been invited. Such a limitation of the place of carrying on business does not, as we view it, amount to a deprivation of the defendant of any right, either a personal right to engage in business or a property right, without due process of law within the intent and meaning of either the state or federal Constitutions.

It is suggested in defendant's brief that the motive in passing the ordinance was to protect local merchants from the competition of nontaxpaying peddlers and solicitors. It was found by the court to have that effect. If only legislation that was passed without the thought that some particular bloc or group might be benefited thereby were allowed to stand, the session laws in size would much more nearly approach than they now do the pamphlets in which were printed rules of the min-

ing districts of the state of Jefferson. Courts are concerned with the existence or nonexistence of the power of a legislative body to pass a law. The motives that actuate the legislators, the wisdom or unwisdom of the law and the incidental effects of it, if there is power to enact it, are not matters with which the judicial branch of the government may properly concern itself. *Johnson v. McDonald,* 97 Colo. 324, 49 P. (2d) 1017.

▬▬ Inasmuch as the ordinance applies equally to all solicitors and does not discriminate against those who are soliciting the sale of goods for nonresident persons or corporations, such effect as it may have on interstate commerce is purely incidental to the operation of a police regulation and does not, in our opinion, constitute a regulation of, or an interference with, interstate commerce within section 8, article I, of the federal Constitution, giving the federal government exclusive power to regulate commerce among the several states. None of the cases in which similar ordinances have been under consideration has held them to be invalid on the ground that they interfered with or were a burden on interstate commerce. In the opinion in the case of *Town of Green River v. Fuller Brush Co.,* 65 F. (2d) 112, it was expressly held that the restrictive ordinance was not a regulation or burden on interstate commerce within the intent and meaning of the interstate commerce clause of the federal Constitution.

▬▬ Our attention is directed to a number of cases from various jurisdictions in which the validity of ordinances couched in the same or practically the same words as the one here under consideration has been passed upon by courts of last resort. The Supreme Court of Wyoming in *Town of Green River v. Bunger,* 50 Wyo. 52, 58 P. (2d) 456, in a lengthy opinion in which many authorities are cited sustained such an ordinance. The court expressed the opinion that the conduct denounced by the ordinance constituted a nuisance in fact, a matter which we have indicated we do not think it necessary

to determine. However, the opinion states: "To sustain the ordinance, we think it unnecessary to decide that the practice which it denounces is a nuisance. The declaration to that effect shows, however, that the purpose of the ordinance is to prevent disturbance and annoyance, the important elements of nuisance. And if the ordinance is a legitimate exercise of the power of the town to prevent disturbances, under sub-section 12 of section 22-1427, supra, it ought not to be held invalid because it erroneously applied the term 'nuisance' to the forbidden conduct." The court also, in its opinion, used the following language which we think pertinent and applicable to the instant case: "The ordinance has a real and substantial relation to the purpose of protecting occupants of homes from disturbance, and we think it is an authorized and reasonable exercise of the police powers of the state delegated to the town council. In so far as it restricts the defendant's activities in going uninvited to private residences for business purposes, it does not deprive him of any right guaranteed to him by either the Fourteenth Amendment to the Federal Constitution or the invoked provisions of the State Constitution."

The same ordinance was given consideration in the case of *Town of Green River v. Fuller Brush Co., supra,* by the United States Circuit Court of Appeals for the Tenth Circuit. That court did not consider the question of whether the inhibited conduct constituted a nuisance. In the opinion among other things it is stated: "It has been uniformly held that while legislative authority may not arbitrarily interfere with private affairs by imposing unusual and unnecessary restrictions upon a lawful business, yet a considerable latitude of discretion must be accorded to the law making power, and if the regulation operates uniformly upon all persons similarly situated and it is not shown that it is clearly unreasonable and arbitrary, it cannot be judicially declared to be in contravention of constitutional right."

In *Jewel Tea Co. v. Town of Bel Air*, 172 Md. 536, 192 Atl. 417, the ordinance involved contained provisions similar to those of the Montrose municipal act, but it contained a proviso that it should "not apply to persons employed by or representing any established merchant, business firm or corporation located and regularly doing business in the Town of Bel Air or to farmers residing in Harford County selling any food item raised or produced by themselves, or to any one duly licensed." The court held that the inhibited conduct did not constitute a nuisance and that a municipality might not declare conduct to be a nuisance unless it was so by common law or by statutory definition. It further and properly held that the ordinance was discriminatory and violated the Fourteenth Amendment to the federal Constitution. On this phase of the question it used language which distinguishes the ordinance there under consideration from the one before us, as follows: "If the local merchant, in response to whose complaints such ordinances are passed, would be rid of such competition, he must submit to the same penalties, burdens, and conditions as he would have imposed on the intruders. It cannot be otherwise done."

The Supreme Court of South Carolina in *City of Orangeburg v. Farmer*, 181 S. C. 143, 186 S. E. 783, had under consideration an ordinance almost identical with that in the instant case. The ordinance was held to be invalid because it was unreasonable and on that ground declared to be unconstitutional.

In *Prior v. White*, 132 Fla. 1, 180 So. 347, the Supreme Court of Florida had under consideration an ordinance to all intents and purposes identical with the one involved in this case. The writer of the opinion quoted from all of the cases which we have herein cited involving the validity of such ordinances, and it was the court's conclusion that the ordinance there questioned was unreasonable and therefore void.

The latest case to which our attention is called is *White v. Town of Culpeper*, 172 Va. 630, 1 S. E. (2d) 269, decided by the Supreme Court of Appeals of Virginia. The ordinance was in all substantial particulars the same as the ordinance involved in this case. The court adopted the narrow construction of the state's authority to exercise police power as formerly limited to those matters pertaining to the public health, public morals, and the public safety, and held that as so construed the ordinance did not constitute a proper exercise of the state's police power. Apparently there was some conflict between the ordinance and a state statute, for the court used this language: "It is to be further observed that the ordinance under review is invalid for the reason that it permits peddlers and brokers, who are licensed under the provisions of section 192, of the Tax Code, Code 1936 Appendix, p. 2457, to do the very thing it prohibits a solicitor from doing. Likewise, it accords to local merchants the privilege of soliciting orders from the citizens of the town of Culpeper. This inconsistent treatment of citizens is admitted proof of the discriminatory character of the ordinance." As we have pointed out, the Montrose ordinance is all inclusive and not subject to the vice of discrimination between different kinds of solicitors.

We have called attention to all of the cases that have passed upon the validity of ordinances similar to the one here in question, in so far as they have come to our attention. There is a clear conflict in the decisions of the various courts. On the basis of the reasons which we have herein set forth and of the reasoning contained in those opinions that uphold the ordinance as a proper exercise of the police power and which we think are in harmony with the present trend to extend the police power to permit its exercise for the promotion of the comfort, convenience, and general welfare of society, we uphold the ordinance.

The judgment of the county court is affirmed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE FRANCIS E. BOUCK dissent.

MR. JUSTICE KNOUS not participating.

MR. CHIEF JUSTICE HILLIARD dissenting.

On the conviction I entertain that in constitutional fundamentals the ordinance involved in this inquiry is subject to the challenges offered by plaintiff in error, I note my dissent to the court opinion.

For dissenting opinion of Bouck, J., see 106 Colo. 1.