PICKENS *v.* McMATH, GOVERNOR.

4-8945                                 220 S. W. 2d 602

Opinion delivered May 23, 1949.

*John E. Coates, Jr.,* for appellant.

*Wood, King & Dawson* and *Rose, Dobyns, Meek & House,* for appellee.

*Marcus Evrard, amicus curiae.*

FRANK G. SMITH, J. This case was disposed of on a demurrer to the complaint which was sustained and from which decree is this appeal. We therefore copy in full appellant's summary of its allegations.

Appellant, a citizen and taxpayer of the State, who is the owner of outstanding refunding bonds issued under Act No. 4 of 1941, hereinafter referred to as Act No. 4, brought this suit against appellees members of the State Board of Fiscal Control, for himself and all others similarly situated, to enjoin the sale and issuance of $7,000,000 of State Highway construction bonds authorized by Act No. 5 of the 1949 General Assembly, hereinafter referred to as Act No. 5.

Act No. 5, approved January 20, 1949, authorizes the State Board of Fiscal Control to issue not exceeding $28,000,000 of general obligation bonds of the State for construction and reconstruction of highways and bridges in the fiscal years 1949 to 1952 inclusive, provided that the issuance of the $28,000,000 in bonds was approved by the electors at a special election called by the Governor, for which the Act provided. The Act provides that the election shall be conducted by the county board of election commissioners as constituted immediately prior to the last general election. An emergency clause was attached. No referendum petition has been filed.

Both Act 4 and Act 5 authorize the issuance of bonds for road purposes, and Act 5 was patterned after Act

4 and it is quite apparent that in drawing the latter act the former was carefully considered.

Several questions were raised, which will be considered, but the important and controlling question is whether Act 5 impairs the obligations of the contracts made under the authority of Act 4.

Section 12 of Act 4 made allocations of highway revenues coming into the State Highway Fund each year which were designated in the opinion in the case of Clayton, State Treasurer, v. City of Little Rock, 211 Ark. 893, 204 S. W. 2d, 145, as allocations A, B, C, and D. Section 12 of Act 5 employs the same designation of allotments A, B, and C.

By allotment A in both Acts the first $10,250,000 of highway revenue as it comes into the State Highway Fund is set aside for highway maintenance and debt service for bonds issued under Act 4, in the proportion of 30% for highway maintenance, and 70% exclusively for current debt service and the redemption and purchase of such bonds.

Allotment B is identical in both Acts and both allotments are contractual in their nature. The revenues referred to in both allotments A and B come from the sale of motor fuel used in transportation on the highways of the State, and from license fees and auto division fees which must of course be maintained in order that the highway may be so used, the use of which involves the sale of motor fuel on which the tax is imposed and collected.

It was said in the case of Scougale v. Page 194 Ark. 280, 106 S. W. 2d, 1023 that: "Whatever enactment abrogates or lessens the means of the enforcement of a contract impairs its obligation," and it remains to be considered whether Act No. 5 has lessened the security given by Act No. 4 to the purchasers of bonds issued under the provisions of that Act.

We copy from appellant's brief his statement of the contentions why Act No. 5 has impaired the obligations

incurred under Act No. 4, and no other reason in support of that contention is suggested. They are:

"1. Notwithstanding the fact that Act No. 5 of 1949 respects and preserves contractual rights in allocations A, B and C, the change in allocation D impairs the contractual rights of the holders of outstanding bonds issued under Act No. 4 of 1941 and of counties and municipalities of the State, contrary to the contract clauses of the Federal and State Constitutions, which renders the Act void;

"2. The covenant in Act 5 not to permit the present laws to be amended so as to reduce the annual revenue pledged to meet the debt service of the bonds is invalid, as it contracts away the police power of the State and thereby renders the entire Act void;

"3. If the covenant not to permit the present laws to be amended so as to reduce the annual revenue pledged to meet the debt service is valid, the provision in subsection G of § 10 of Act No. 5 allocating the next $2,500,000 for a refund of a portion of the taxes paid on gasoline used in farm equipment, as the Legislature may determine, is in effect a reduction of the annual revenue pledged for debt service and violates the covenant and is void.

"4. The resolution of the State Board of Fiscal Control providing for notice of the sale of the bonds is based upon a certification by the State Highway Commission of the funds available for the fiscal year ending March 31, 1949; whereas, Act No. 5 of 1949 contemplates that said certification should be based upon the revenues of the fiscal year in which the bonds are issued which would be the fiscal year beginning April 1, 1949, and, therefore, the issuance of the bonds at this time would be premature;

"5. The emergency clause of Act No. 5 does not state facts sufficient to constitute an emergency under Amendment No. 7 of the Constitution of Arkansas and for that reason the Act, if valid, could not go into effect until ninety days after the adjournment of the Legis-

lature, and since the Act was not effective on February 15, 1949, the election held on that date was premature and void;

"6. Act No. 5 of 1949 creates vested rights. Amendment No. 7 to the Constitution of Arkansas forbids an emergency on any act creating a vested right. Therefore, the Act is invalid as an emergency measure. For that reason the Act, if valid, could not become effective until ninety days after the adjournment of the Legislature and the election, therefore, was void;

"7. The election on the bonds was not conducted by the county election boards provided for in Initiated Act No. 3 of 1948, and in some counties notice of the election was not given by proclamation of the sheriff, as required by the general election laws, and for this reason the election was void; and

"8. As the bonds would pledge the faith and credit of the State and its revenues, and were not approved by the people at a valid election, they would contravene amendment No. 20 of the Constitution of Arkansas."

In answer to these contentions it may be said that allocations A and B are in fact contractual in their nature, and it would impair the obligations of the bond contract to change them, but they have not been changed. They are the same in both Acts and each contains the contractual provisions for the payment of the bonds, so that the holders thereof have not been deprived of any security given them under Act No. 4 by Act No. 5.

Allotments C and D of Act No. 4 are not contractual in their nature as they relate to distribution of highway funds after allotments A and B have been fully made. The allotments C and D of Act No. 4 are allotments which are in the nature of gratuities and the State is under no contractual obligation to continue them. They may be given or withheld at the State's pleasure. It was so held in the Clayton case supra, and they cannot be given until allotments A and B have been observed.

In § 10 of Act No. 5, allocations A, B, D, E, H, and I will become contractual sections when bonds are issued under said Act No. 5, and allocations C, F, and G of § 10 of Act No. 5 are gratuity sections, as that term is used in Clayton v. Little Rock, supra.

As the security offered to the bond holders when the bonds were sold and issued under Act No. 4 has not been impaired or lessened, the objections contained in paragraphs 1, 2 and 3 of appellant's complaint are not well taken and cannot be sustained.

Appellant contends that under § 3 of Act 5 the certificate of the Highway Commission as to money available for construction of roads should be for the fiscal year beginning April 1, 1949, and not for the fiscal year ending March 31, 1949, and that therefore the issuance of the bonds at this time would be premature.

Section 1 Act No. 5 defines the word "year" or "fiscal year" as meaning the 12 month period beginning each April 1st and ending the following March 31st, and pursuant to the directions of § 3 the Fiscal Board prepared a certificate which recites that the Highway Commission had on April 8, 1949, certified the amount of revenue available to the State Highway Department for the construction and reconstruction of highways and bridges to be less than $13,000,000, so that the condition precedent for issuing $7,000,000 in bonds existed. In view of the facts stated we think it was the intent of Act No. 5 that the first issuance of bonds would be in the fiscal year beginning April 1, 1949, and this conclusion is supported by the recitals in the emergency clause of the Act as to the condition of the roads of the State and the urgency for their repair.

At the special election called and held pursuant to Act No. 5, the proposed bond issue was approved by a vote of 108,290 for, to 24,457 against, but it was alleged that in some counties notice was not given by the sheriff as provided in the general election law. As to this allegation it may be said that it is common knowledge that elections were held in all the counties in the State, and

that a substantial vote was polled in each of them, considering the fact that the election was a special one involving only a single question. In the case of Brown v. Bradberry, 214 Ark. 937, 218 S. W. 2d 733, where a similar question was raised it was said: "A second answer is that procedural directions when viewed retrospectively are not mandatory unless of the essence of what is to be accomplished. Though enforceable by appropriate action taken before the voters have spoken the participating majority will not (in the absence of fraud) be deprived of the fruits of its victory upon a showing that a ministerial act was overlooked. One of the frequently-quoted cases in which after-election complaints are discussed is Wheat v. Smith, 50 Ark. 266, 7 S. W. 161. See, also, Henderson v. Gladish, 198 Ark. 217, 128 S.W. 2d, 257. Many other decisions hold that the will of a majority cannot be defeated because of procedural omissions that did not prevent a fair expression."

It is insisted that the emergency clause of Act 5 does not state facts sufficient to constitute an emergency under Amendment No. 7 to the Constitution and for that reason the Act if valid, did not go into effect until ninety days after the adjournment of the Legislature and for this reason the election on February 15, 1949, was premature and void.

We think, however, that the emergency clause sufficiently declares the existence of an emergency within the meaning of Amendment to the Constitution No. 7. Its recitals are as follows:

"Section 20. It has been found and it is hereby determined by the General Assembly that many of the highways of the State are in a dangerous condition caused by lack of funds for their repair and maintenance and are a daily menace to the traveling public; that the repairs and construction of the present public roads and the construction of new roads contemplated by this Act are necessary for the safety of the traveling public, and that such repairs, reconstruction, and new construction should be commenced as early as practicable in the spring of the year 1949; that low interest rates now prevail which

have created a market advantageous to the issuance of bonds; that the duration of such low interest rates is uncertain for the following reasons: (a) the consensus among bond dealers and other experts is that the long term trend of interest rates is upward; (b) that the recent decline in the interest rates upon State and municipal securities is opposed to the forecasted long term trend of interest rates and may prove to be of short duration; (c) the supply of State and municipal securities is constantly being augmented by the issuance of large amounts of bonds by the States and municipalities, and (d) the possibility of war; that the State should take advantage of the present favorable market and its failure to do so will result in great financial detriment of the State; that only by this Act can the said dangerous condition of the State highways be promptly remedied and for that reason it should take effect without delay; and for said reasons it is hereby declared necessary for the preservation of the public peace, health and safety that this Act should become effective without delay. An emergency, therefore, is declared to exist and this Act shall take effect and be in force from and after its passage and approval by the Governor.''

If the conditions of the roads are such as they were found and declared to be, their immediate repair is urgent. The emergency clause of Act 5 is as definite as was that clause in Act No. 4 which was sustained in the case of Fulkerson v. Refunding Board, 201 Ark. 957, 147 S.W. 2d, 980. Having an emergency clause the Act was effective when approved by the Governor, subject of course to the right of referendum. In the Fulkerson case as in this, the special election provided for in each Act was held within the time when the Act was subject to the right of referendum, but it may be said here, as it was said in the Fulkerson case, that since a valid emergency clause was attached to Act No. 5, the election provided for therein was properly held without waiting for the expiration of ninety days after the adjournment of the General Assembly.

It is argued that Act No. 5 creates vested rights prohibited by Amendment No. 7 to the Constitution.

Similar objection was made to Act No. 4, § 18 of which reads as follows: "This act shall not create any right of any character, and no right of any character shall arise under or pursuant to it, unless and until bonds authorized by this act shall have been issued and actually sold or exchanged by the board."

It was held in the Fulkerson case supra, as shown in a headnote of that case, that: "Since, under Act No. 4 of the 1941 session of the General Assembly providing for the refunding of the state's highway bonds it is provided that no vested rights shall accrue thereunder until the consent of the people had been given at an election to be held for that purpose, no vested rights can arise until that condition is performed." Act No. 5 has a similar proivsion and must of course be given the same construction. The election had been held, but no bonds have been sold under Act No. 5 so that no one is yet in position to claim that he has any vested right under Act No. 5.

It is insisted that inasmuch as Initiated Act No. 3 had been approved by the electors of the State and was in effect when the bond election was held, that the bond election should have been held in accordance with the provisions of the Initiated Act. It may be answered that Act No. 3 applies only to the election of public officers and to initiated and referred measures.

Act No. 5 is not an initiated measure and has not been referred and does not involve the election of any public officers. Moreover Act No. 5 provides in § 15 thereof that, "The County Boards of Election Commissioners of the several counties of this State, as constituted immediately prior to the last general election, shall hold and conduct this election, anything in Initiated Act No. 3 of 1948 to the contrary notwithstanding, * * *." We hold therefore that the bond election was held pursuant to law.

Upon the insistence that the State has contracted away its police powers, but little need be said. The police power and the taxing power which we hold here has not been exceeded, are different powers. The police power

appertains to such rules and regulations relating to personal and property rights as affects the public health, public safety and public welfare. Bacon v. Walker, 204 U. S. 311, 27 S. Ct. 289, 51 L. Ed. 499; Williams v. State, 85 Ark. 464, 108 S. W. 838, annotated in 26 L. R. A., N. S. 482, 122 Am. St. Rep. 47.

It is the right of the State to regulate all activities within its territorial limits, protecting the public welfare and as applicable here, it is the right of the State to regulate the traffic on the state highways in such matters as speed limits, limiting the weight of vehicles, and regulating the conduct of persons in using the highways, etc. There is nothing in the Act which impairs or restricts the power of the State in these respects, or for that matter relating to those powers.

It may finally be said in answer to appellant's last objection that there has been no contravention of Amendment No. 20 to the Constitution. This amendment provides that except for the purpose of refunding the existing indebtedness of the State and for assuming and refunding valid outstanding road improvement district bonds, the State shall issue no bonds or other evidence of indebtedness pledging the faith and credit of the State, or any of its revenues, for any purpose whatsoever except by and with the consent of the majority of the qualified electors of the State, voting on the question at a general election, or at a special election called for that purpose. But it appears from what has already been said there has been no violation of this amendment, for the reason that the consent of the majority of the qualified electors of the State, voting on the question at a special election called for that purpose, has been given to the proposed bond issue.

A brief has been filed by an *amicus curiae* which deals with the policy of issuing these bonds and raises questions and presents arguments which should have been addressed to the General Assembly and may not be considered by us.

We think Act No. 5 is free from any of the constitutional objections urged against it and the demurrer to

342

the complaint was properly sustained and the decree is therefore affirmed.

George Rose Smith, J., non-participating.